691 P.2d 1286

STATE of Idaho, Plaintiff-Respondent,

v.

Jack Warren YOUNG,
Defendant-Appellant.

No. 14570.

Court of Appeals of Idaho.

Nov. 28, 1984.

John P. Luster, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen. and Myrna A.I. Stanman, Deputy Atty. Gen., argued, Boise, for plaintiff-respondent.

SWANSTROM, Judge.

Following a jury trial, Jack Warren Young was found guilty of manufacturing a controlled substance, I.C. § 37-2732(a)(1)(B). He has appealed from the judgment of conviction, raising only one issue: Did the district court err by refusing to suppress certain evidence seized from his property? We hold the court did not err and we affirm the conviction.

The basic facts are undisputed. Two investigators with the Idaho Bureau of Narcotics stopped along Highway 41, north of Rathdrum, Idaho, near the entrance to property Young was renting, a wooded tract of approximately twenty acres. They had received a tip from an informant that marijuana was being grown there. The entrance to the property was blocked by a gate near Young's home; a fence extended north and south for a short distance on either side of that gate. There were two signs on the gate: one was a "No Trespassing" sign; the other was a "Beware Of Dog" sign. Stymied momentarily by these impediments, the investigators retreated some distance south along Highway 41. They then walked east through a heavily wooded area. The investigators did not come upon any fences or "No Trespassing" signs during their hike.

They came to a clearing where Young's home and various other structures were visible. They were, at that time, some thirty to forty yards away from the nearest structure—a corral-like enclosure. Both investigators observed and identified, with the aid of binoculars, two marijuana plants growing in the corral. Moving to a nearby knoll, one of the investigators was able to identify at least six marijuana plants growing in a greenhouse, about seventy-five yards distant. Binoculars again were used to make positive identification. In addition, the investigator was able to observe the plants in the greenhouse only because the opaque plastic cover on the frame of the greenhouse was torn and a flap of plastic was being blown about fortuitously by the wind. Armed with their observations and conclusions, the investigators returned to their car and went to a nearby magistrate. We should mention here that at no time did the officers physically intrude into the "curtilage" area surrounding the residence. The magistrate issued a search warrant for the property and all buildings thereon. Marijuana and drug paraphernalia were seized.

At trial, urging various grounds, Young moved to suppress all the evidence seized. The district court agreed in part with Young's motion and the court therefore suppressed all evidence seized with the exception of the marijuana obtained from the greenhouse and the corral. Young then went to trial and was convicted. He now contends the evidence seized from the greenhouse and the corral should also have been suppressed.

The only question presented by Young concerns the interrelationship of three United States Supreme Court opinions: *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); and *Oliver v. United States*, —— U.S. ——, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). In *Hester*, the Court held that the protections of the fourth amendment against unreasonable searches and seizures did not extend to "open fields." The *Katz* decision cast doubt upon the continued validity of *Hester*. The Court in *Katz* emphasized that "the Fourth Amendment protects people, not places." The *Katz* decision has resulted in extending fourth amendment protection even to areas accessible to the public where a person had exhibited a subjective expectation of privacy and where that expectation is

one that society is prepared to recognize as reasonable. *Oliver*, however, breathed new life into *Hester*. The Court in *Oliver* decided that any subjective expectation of privacy in open fields was per se *not* objectively reasonable. In *Oliver* the court said,

> [i]t is clear ... that the term "open fields" may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither "open" nor a "field" as those terms are used in common speech. For example, ... a thickly wooded area nonetheless may be an open field as that term is used in construing the Fourth Amendment.

— U.S. at — n. 11, 104 S.Ct. at 1742 n. 11. The officers in *Oliver* had walked around a locked gate, posted with a "No Trespassing" sign, and along a road for several hundred yards to a secluded field in which marijuana was being grown. The Court stated: "It is not generally true that fences or no trespassing signs effectively bar the public from viewing open fields in rural areas." *Oliver v. United States*, — U.S. at —, 104 S.Ct. at 1741. The *Katz* formulation, therefore, did not extend to open fields.

Young nevertheless maintains that he had exhibited an objectively reasonable, subjective expectation of privacy about his property. Thus, he suggests that *Oliver* did not set out a bright-line rule denying fourth amendment protection to open fields. His argument is that if under *Katz* an objectively reasonable, subjective expectation of privacy was demonstrated, even in open fields, neither *Oliver* nor *Hester* would sanction an officer's warrantless intrusion. This is especially true, Young contends, in cases where officers use extraordinary means to make their observations— here the extraordinary means involved hiking through a heavily wooded area and, presumably, using binoculars to make a positive identification. A suggestion was also made that even if *Oliver* did set out a bright-line rule, we should not read the Idaho Constitution so narrowly.

We need not, however, determine the reach of either the Idaho Constitution or *Oliver*. Even should the *Katz* formulation be applied, we hold that the investigators here did not violate Young's fourth amendment rights. Before the United States Supreme Court decided *Oliver*, we released *State v. Kelly*, 106 Idaho 268, 678 P.2d 60 (Ct.App.1984), *cert. denied*, — U.S. —, 105 S.Ct. 296, 83 L.Ed.2d 231 (1984). There, the question of the effect of *Katz* upon *Hester* was also raised. We declined to decide that question because, like here, even under the *Katz* formulation the fourth amendment did not offer the defendant any protection. Kelly, we held, may have exhibited a subjective expectation of privacy, but such expectation was "in no sense reasonable." *Id.* at 273, 678 P.2d at 65. Kelly's rural property was surrounded by a barbed-wire fence in ill repair. There were no "No Trespassing" signs. Any expectation he may have had that his property would be free from trespassers was unreasonable considering the absence of any effective measures to exclude the public.

 In the present case, the officers encountered no fence at all, in any condition, where they went upon the property. Even though Young had exhibited a subjective expectation of privacy by posting a "No Trespassing" sign on the gate to his property, it did not establish an expectation of privacy to the entire twenty acres he had leased. It was unreasonable for Young to expect that people would not approach his property, as the investigators here did, through the woods. Since Young had not taken any effective steps to keep people from entering his property through the woods, there was no way the investigators could have known at what moment they had intruded upon property from which the public was excluded. In our view, they committed no violation of the fourth amendment by walking through the woods and making the observations which served as the basis for the search warrant. The district court did not err in refusing to suppress the evidence seized from the corral and greenhouse.

The judgment of conviction is affirmed.

WALTERS, C.J., and BURNETT, J., concur.