732 P.2d 431

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Kenneth CRENSHAW,
Defendant-Appellant.**

No. 9069.

Court of Appeals of New Mexico.

Dec. 23, 1986.

Martha A. Daly, Rothstein, Bailey, Bennett, Daly & Donatelli, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Patricia Frieder, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant appeals his conviction for possession of marijuana with intent to distribute, contending that: (1) the evidence obtained pursuant to the search warrant was inadmissible as the product of an illegal search and seizure; (2) there was insufficient evidence of defendant's possession of marijuana; and (3) there was insufficient evidence of defendant's intent to distribute the marijuana. Other issues raised in the docketing statement but not briefed are deemed waived. *State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985). We hold that portions of the evidence obtained were inadmissible as the products of an illegal search and seizure and, therefore, reverse and remand for a new trial.

The affidavit which formed the basis for issuing the search warrant states that the affiant, a police officer, and another officer went on a foot patrol into the Lincoln National Forest in search of marijuana. The accompanying officer, who lived in the area, had observed defendant going into and coming out of the forest "in an area to be described in this affidavit." During their patrol, the officers saw a stand of

what appeared to be approximately thirty-seven marijuana plants growing on the south side of a dirt road. A not-to-scale diagram of the areas involved will clarify the facts of this case:

The first stand of approximately thirty-seven marijuana plants is labeled "A" on the diagram. At point A, the officers believed initially that they were on national forest land. They proceeded further into the forest and "unexpectedly noted a cabin with black paper on the wall and a tin roof, with other outbuildings nearby." The affidavit states that "[i]n close proximity of this cabin, in plain view, numerous suspected marijuana plants were observed." One officer also noted defendant's vehicle at the cabin. Testimony revealed that the officers observed ten to twelve suspected marijuana seedlings in three flower pots under a clothesline in an area near the house. ("B" on diagram.) While on the property, the officers photographed the cabin and stands of marijuana growing in the woods surrounding the cabin. The officers then retreated to obtain a search warrant. After leaving the vicinity of the cabin, the officers discovered approximately seventy-four suspected marijuana plants. ("C" on diagram.)

The officers executed an affidavit for a search warrant, which contained an incorrect description of the property to be searched. The same officers returned to the property with the warrant and seized evidence from points A, B, and C. The officers also discovered and seized approximately forty-one plants at point "D" on the diagram and additional marijuana seedlings at point "E." Also seized at or near point B were four buckets of sand, forty-six empty small black cans, one sack of fertilizer, one gallon plastic "jerry" can, three green water hoses, several plastic sacks containing buckets, and numerous one-gallon plastic water jugs. Finally, the officers seized one dried marijuana plant in a wine bottle in the kitchen of the cabin. The cabin, and points A, B, D and E, are located on property leased by defendant.

In determining the admissibility of the evidence seized, we will consider several issues. We consider the reasonableness of the initial search, which provided the basis for probable cause for issuance of the search warrant, and will examine possible exceptions that would validate the search. If the initial search was unreasonable, then portions of the affidavit supporting the search warrant must be excluded. If the remaining information does not constitute probable cause, the search warrant will be invalid. If the search warrant is invalid, evidence seized pursuant to the warrant will be inadmissible unless an exception

eliminates the need for a warrant. We also consider whether any exception applies.

**INITIAL SEARCH**

■ To determine the admissibility of evidence seized pursuant to the search warrant, we first consider the reasonableness of the initial search. Defendant contends that the initial search that formed the basis for probable cause to issue the warrant was illegal because the officers intruded onto the curtilage of the cabin that defendant leased, an area protected by the fourth amendment. We agree.

The state argues that the cabin was not a dwelling house and the area surrounding it was not curtilage to which fourth amendment protections would attach. The state bases this argument on the fact that the cabin was not defendant's home or principal residence. There was evidence, however, that defendant was frequently on the leased property and would occasionally stay overnight at the cabin. Friends often visited for cookouts. In fact, defendant had stayed at the cabin the night preceding the search. Defendant had worked to repair the cistern and mend the fences. A clothesline was set up and there was a trash can on the premises. Inside the cabin were beds, a stove and other furniture.

Defendant's use of the cabin was in keeping with that of a vacation home. It was not abandoned or vacant. *Cf. State v. Clark*, 105 N.M. 10, 727 P.2d 949 (Ct.App. 1986). The cabin was a dwelling house to which fourth amendment protections attach. *See Steeber v. United States*, 198 F.2d 615 (10th Cir.1952) (unoccupied leased premises protected by fourth amendment); *Roberson v. United States*, 165 F.2d 752 (6th Cir.1948) (house which was not legal domicile protected by fourth amendment); *State v. Ervin*, 96 N.M. 366, 630 P.2d 765 (Ct.App.1981) (house unoccupied for over one year with no gas, water or electricity was a dwelling house within meaning of burglary statute). *See also* Annot., 33 A.L.R.2d 1430 (1954).

■ Furthermore, the area surrounding the house constitutes curtilage protected by the fourth amendment. Generally, the curtilage is "the enclosed space of grounds and buildings immediately surrounding a dwelling house." *State v. Aragon*, 89 N.M. 91, 94, 547 P.2d 574, 577 (Ct.App. 1976), *rev'd on other grounds, State v. Rickerson*, 95 N.M. 666, 625 P.2d 1183 (1981). Evidence in the present case indicated that the cabin was situated in a clearing enclosed by dense woods. The clearing contained several outbuildings, a cookout grill and clothesline, all in close proximity to the cabin. The officers saw marijuana when they were thirty to seventy-five feet from the cabin. Some marijuana was under the clothesline. The curtilage in the present case included the area from which the officers observed the marijuana plants under the clothesline. *See, e.g., United States v. Van Dyke*, 643 F.2d 992 (4th Cir.1981) (area occupied by officers in honeysuckle patch one hundred fifty feet from house was within curtilage). *Cf. State v. Aragon*. Defendant had a legitimate expectation of privacy in this area. The intrusion onto the curtilage of defendant's property violated his fourth amendment rights.

**FOURTH AMENDMENT WARRANT REQUIREMENTS**

■ The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The fourth amendment guarantees that people will not be subject to unreasonable searches and seizures. *State v. Foreman*, 97 N.M. 583, 642 P.2d 186 (Ct.App.1982). The proscription against unreasonable searches protects expectations of privacy. *Id.* Warrantless searches are per se unreasonable unless they fall within certain well-defined exceptions to the warrant requirement. *State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979). Exceptions to the warrant requirement in-

clude probable cause with exigent circumstances, a search incident to an arrest, an inventory search, consent, hot pursuit, open fields, and plain view. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Chort*, 91 N.M. 584, 577 P.2d 892 (Ct.App.1978); *State v. Ledbetter*, 88 N.M. 344, 540 P.2d 824 (Ct.App.1975). Absent an exception, the government must obtain a warrant to search a person's home.

## POSSIBLE EXCEPTIONS TO WARRANTLESS INTRUSION ONTO DEFENDANT'S CURTILAGE

We discuss and apply the following exceptions to a warrantless search in the context of the officers' warrantless intrusion onto defendant's curtilage. We apply these same exceptions later in this opinion in the context of the seizure of evidence from both defendant's curtilage and other nearby areas.

### 1. Open Fields

 The "open fields" doctrine permits police officers to enter and search a field without a warrant. *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). In *Oliver v. United States*, the police had no warrant authorizing a search, no probable cause for the search, and no exception to the warrant requirement was applicable. However, the Court allowed into evidence marijuana plants found in a field on defendant's property, a mile from the house. In applying the "open fields" exception, the Court concluded that an individual has no legitimate expectation of privacy for activities conducted out-of-doors in fields, except in the area immediately surrounding the home. *Id.* The Court reiterated that an open field may be a heavily wooded area for purposes of the fourth amendment. *Id.* at 180, n. 11, 104 S.Ct. at 1742, n. 11. Here, defendant had a legitimate expectation of privacy in the area surrounding his cabin. The open fields exception cannot excuse the officers' lack of a search warrant.

### 2. Plain View

 The officer states in the affidavit for the search warrant that some of the items were "in plain view." This misses the point. Plain view alone does not justify an exception to the requirement of a warrant. *Coolidge v. New Hampshire; State v. Luna*, 93 N.M. 773, 606 P.2d 183 (1980). To come within the plain view doctrine, three things are required: 1) a prior valid intrusion (the officers are lawfully in the position from which they observe the evidence); 2) the discovery of evidence in plain view must be inadvertent; and 3) the incriminating nature of the things to be seized must be immediately apparent to the officers. *State v. Luna; State v. Dobbs*, 100 N.M. 60, 665 P.2d 1151 (Ct.App.1983). Here, the police had no right to be on the curtilage when they observed marijuana growing in close proximity to the cabin. The plain view exception cannot justify the intrusion onto the curtilage of defendant's cabin in violation of defendant's fourth amendment rights. *State v. Luna.*

### 3. Good Faith

The state also urges us to apply the good faith exception to the exclusionary rule adopted by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *United States v. Leon*, the Court concluded "that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922, 104 S.Ct. at 3421. In *United States v. Leon*, however, a magistrate issued a search warrant based on information from an unreliable, third-party informant; thus, no probable cause supported the warrant. Police officers used the warrant to obtain evidence. The Court declined to exclude the evidence, even though it was seized pursuant to a warrant subsequently invalidated because of a technical error on the part of the issuing judge. The Court reasoned that the exclusionary rule was designed to deter police misconduct rather than punish the errors of

judges and magistrates. When an officer exhibits objectively reasonable reliance on such a warrant, suppression of the evidence is inappropriate. *Id.*

■ In asking this court to apply the good faith exception to the case before us, the state argues that the technical misdescription of the property in the warrant should not bar the admission of evidence. In our case, the police officers first violated defendant's fourth amendment rights by trespassing onto the curtilage. Then a search warrant was issued. The Supreme Court leaves to the state courts' discretion whether to resolve a fourth amendment question before turning to the good faith issue or whether to turn immediately to consider the officers' good faith. *Id.*, 468 U.S. at 924–25, 104 S.Ct. at 3422–23. We choose to examine first the fourth amendment violation. Since we have already determined that the search warrant fails based on a pre-warrant trespass onto defendant's curtilage, and not on a technical misdescription of the property to be searched, we will not apply the good faith exception.

If we were to apply the good faith exception here, we would be allowing the exception to cure the violation of the fourth amendment by the police. Despite numerous limitations placed recently on the exclusionary rule by the United States Supreme Court, the purpose of the exclusionary rule remains to deter unlawful searches by the police. *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). We cannot at once deem the officers' trespass an "unreasonable search," then purport to apply an "objectively reasonable" good faith test to overcome the trespass. Doing so would force us to declare a constitutionally unreasonable search as reasonable and would virtually eliminate the exclusionary rule. This we decline to do.

Having examined the three exceptions discussed above, we determine that none of the exceptions excused the officers from obtaining a search warrant before intruding onto the curtilage of defendant's cabin. Evidence observed pursuant to a warrantless search must be excluded. *United*

*States v. Sporleder,* 635 F.2d 809 (10th Cir.1980). We now examine the affidavit, excluding evidence viewed on the curtilage.

**AFFIDAVIT AND VALIDITY OF SEARCH WARRANT**

■ When a search warrant is based partially on tainted evidence and partially on evidence arising from independent sources, evidence seized pursuant to the warrant is admissible if the lawfully obtained information amounts to probable cause and would have justified the issuance of the warrant apart from the tainted information. *State v. Copeland,* 727 P.2d 1342 (Ct.App.1986); *see also United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). The proper inquiry, therefore, is whether the affidavit contained any tainted information and, if so, whether any remaining, untainted information established probable cause for the issuance of a search warrant. Any statements made in the affidavit that are based on information gained in violation of defendant's rights may not be used to establish probable cause. *State v. Copeland.* The observation of the marijuana seedlings under the clothesline and of defendant's vehicle at the cabin cannot be used to establish probable cause. Without these statements, the affidavit states: 1) the officers were assigned to patrol forest land to detect marijuana; 2) defendant had been seen going into and coming out of the forest; 3) while on foot patrol the officers saw thirty-seven marijuana plants; 4) defendant usually travelled down the dirt road next to the stand of marijuana; and 5) the officers proceeded further into the forest. These facts are insufficient to establish probable cause to search defendant's property. *State v. Baca,* 97 N.M. 379, 640 P.2d 485 (1982); *see State v. Herrera,* 102 N.M. 254, 694 P.2d 510 (1985). The search warrant is, therefore, invalid, and evidence seized pursuant to the warrant must be excluded.

Because we find the search warrant invalid based on the lack of probable cause for issuance, we do not reach defendant's contention concerning the warrant's incorrect description of the premises. We now examine all of the evidence seized, apply

any exceptions discussed above, and determine if any of the evidence is admissible.

## EVIDENCE FROM POINT A

■ Point A revealed approximately thirty-seven marijuana plants. The officers first thought these plants were growing on forest land. After more careful analysis of local maps, the officers concluded that the plants were growing on property leased exclusively to defendant. These plants were approximately one-quarter mile from the cabin and were not within the curtilage protected by the fourth amendment. We conclude that the "open fields" exception to the fourth amendment allows into evidence the plants seized at point A.

Applying *Oliver v. United States* to our case, we find that defendant had no legitimate expectation of privacy to the area outside the curtilage of his cabin. Defendant exhibited no expectation of privacy, such as a fence around the plants. *Cf. State v. Chort* (five-foot fence around marijuana garden exhibited actual expectation of privacy; "open fields" doctrine did not apply). Therefore, evidence of the thirty-seven plants is admissible under the "open fields" doctrine.

## EVIDENCE FROM POINTS B, D, AND E

■ All of the items seized from points B, D, and E were seized pursuant to a search warrant, invalidated because of an unreasonable search of defendant's curtilage. None of the exceptions discussed above justified the initial search, and the evidence of the search could not be used to establish probable cause for the search warrant. Neither can the fruits of the unreasonable search and invalidated warrant be admitted into evidence. *State v. Everitt*, 80 N.M. 41, 450 P.2d 927 (Ct.App. 1969). Under the "fruit of the poisonous tree" doctrine, evidence seized from points B, D, and E must be excluded.

We note that the United States Supreme Court has stated clearly that the curtilage exception does not bar police observation from a public vantage point where they have a right to be. *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). Thus, in *California v. Ciraolo*, aerial observation of the curtilage of the home did not require a warrant. *See also State v. Rogers*, 100 N.M. 517, 673 P.2d 142 (Ct.App.1983) (aerial surveillance with binoculars not unconstitutionally intrusive). We note also that the officers could have placed the marijuana stand at point A under surveillance to determine who was cultivating the plants. Such an observation might have provided sufficient probable cause for an arrest or a search warrant.

## EVIDENCE FROM POINT C

■ The plants at point C were located on national forest land. Seizure of these plants could have occurred with or without a search warrant. Defendant's reasonable expectation of privacy and fourth amendment rights were not violated when officers seized these plants. Therefore, evidence seized from point C is admissible.

A possible problem of commingling of evidence taken from defendant's property and from forest property now arises. One officer testified that it was impossible to tell which marijuana plants came from the different locations. All of the plants were put together in trucks, the stems were mixed in with leaves, and a commingled sample was sent to the laboratory for evaluation. The trial court did not reach this issue, since it admitted all of the evidence. Upon remand, the trial court must determine if there are any means of distinguishing the admissible evidence from the inadmissible.

We note that if all of the evidence in this case had been admissible, it would have been sufficient to support defendant's conviction on both possession and intent to distribute. *State v. Bowers*, 87 N.M. 74, 529 P.2d 300 (Ct.App.1974); *State v. Baca*, 87 N.M. 12, 528 P.2d 656 (Ct.App.1974).

We reverse defendant's conviction and remand for a new trial in accordance with this opinion.

IT IS SO ORDERED.

ALARID and FRUMAN, JJ., concur.