816 P.2d 518

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Vann SUTTON, Defendant–Appellant.**

**No. 12396.**

Court of Appeals of New Mexico.

June 11, 1991.

Certiorari Denied July 29, 1991.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Thomas F. Stewart, Silver City, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant appeals his conviction for distribution of marijuana and possession of drug paraphernalia, and the trial court's refusal to suppress marijuana discovered in a garden plot. The officers who discovered the marijuana did not have a warrant to search the property, and defendant argues that the officers' actions violated his constitutional rights. Following the trial court's denial of his motion to suppress, defendant pled guilty under a plea agreement which preserved his right to appeal. We affirm.

The officers received a tip that marijuana was being grown on a certain plot of land in an isolated portion of Catron County. Following up on the tip, law enforcement officers went to the property to investigate. The state contended below that law enforcement officers obtained the landowner's permission to enter the property; however, no admissible evidence supporting this claim was introduced at the suppression hearing. On the property they discovered two fields of marijuana. According to the officers, the first field was one hundred to one hundred forty yards from a cabin located on the property, and the second was another seventy-five to one hundred yards away. Scattered around the cabin area were a shed, one or two trailers, and mining equipment, and there was an outhouse located forty yards from the cabin. A footpath led from the cabin past the

outhouse to the first field. The terrain in the area is extremely rugged and heavily forested, and is nine miles from the main highway. A dirt road leads past the cabin, but it was not possible to view the marijuana fields from the road. The property's owners told the officers that defendant had a right to be on the property, and his standing to protest the discovery of the marijuana is not at issue in this case.

After discovering the marijuana plots, the officers put the property under surveillance. Defendant drove his pickup onto the property and parked near the cabin. At that point, the officers walked back up the dirt road to a point approximately parallel to the fields, then walked cross-country down a "pretty steep hill" to get from the road to the fields. The officers hid near the fields and arrested defendant when he appeared at the first field.

Defendant maintains that the marijuana fields were within the curtilage of the residence on the property, and therefore that the warrantless search violated the fourth amendment to the United States Constitution. He also argues that the officers trespassed through the curtilage to discover the fields, and this should result in exclusion of the evidence. However, at no time during the suppression hearing did defendant argue that the marijuana should be suppressed because the officers walked through the curtilage to discover the fields. This in essence is an argument that officers may not trespass on curtilage in order to gain access to evidence located outside the curtilage. Since the argument was not made below, however, we do not consider it. *See generally State v. Muise,* 103 N.M. 382, 707 P.2d 1192 (Ct.App.1985) (appellate court will not consider issues not raised in the trial court, even if the issues are constitutional claims). Finally, he argues that the New Mexico Constitution should provide greater privacy protection than the federal search and seizure provision, so that even if the fields were not within the cabin's curtilage, the marijuana should have been excluded. We first address the argument based on the fourth amendment.

**FOURTH AMENDMENT: OPEN FIELDS EXCEPTION.**

In *Hester v. United States,* 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924), the United States Supreme Court decided that the protection accorded by the fourth amendment to " 'persons, houses, papers, and effects' " against unreasonable searches and seizures does not extend to the "open fields." The Court noted, in an opinion by Mr. Justice Holmes, that "[t]he distinction between [open fields] and the house is as old as the common law. 4 Bl.Comm. 223, 225, 226." *Id.*

In *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), however, the Court held that the fourth amendment does not turn upon the "presence or absence of a physical intrusion into any given enclosure." *Id.* at 353, 88 S.Ct. at 512. Noting that the "Fourth Amendment protects people, not places," *id.* at 351, 88 S.Ct. at 511, the Court held that, in the absence of a warrant, the use of an electronic listening and recording device attached to the outside of a telephone booth to eavesdrop on a telephone conversation violated the defendant's constitutionally-protected right of privacy. Under *Katz,* then, the proper inquiry is whether a person has exhibited a subjective expectation of privacy in the location, whether society is prepared to recognize that expectation of privacy as reasonable, and whether the expectation has been violated by an unreasonable government intrusion. *See State v. Chort,* 91 N.M. 584, 577 P.2d 892 (Ct.App. 1978). Consequently, the *Katz* decision cast doubt on the continued validity of *Hester. State v. Young,* 107 Idaho 671, 691 P.2d 1286 (Ct.App.1984).

Seventeen years after the *Katz* decision, the Supreme Court decided *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). In *Oliver,* the Court allowed into evidence marijuana plants found in a field on the defendant's property located a mile from the house. *See generally State v. Crenshaw,* 105 N.M. 329, 333, 732 P.2d 431, 435 (Ct.App.1986) (discussing *Oliver* ). The Court concluded that an individual may not legitimately demand priva-

cy for activities conducted out of doors in fields, except in the area immediately surrounding the home. *Id.* Thus, the "open fields" doctrine permits police officers to enter and search a field without a warrant, *id.,* and the term "open fields" includes any unoccupied, undeveloped area outside the curtilage of a residence. *Oliver v. United States,* 466 U.S. at 180 n. 11, 104 S.Ct. at 1742 n. 11.

The common law on which Justice Holmes relied in *Hester* "distinguished 'open fields' from the 'curtilage,' the land immediately surrounding and associated with the home." 466 U.S. at 180, 104 S.Ct. at 1742.

> At common law, the curtilage is the area to which extends the intimate activity associated with the "sanctity of a man's home and the privacies of life," *Boyd v. United States,* 116 U.S. 616, 630 [6 S.Ct. 524, 532, 29 L.Ed. 746] (1886), and therefore has been considered part of home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. Conversely, the common law implies, as we reaffirm today, that no expectation of privacy legitimately attaches to open fields.

*Id.* (citations and footnote omitted). "The curtilage concept originated at common law to extend to the area immediately surrounding a dwelling house the same protection under the law of burglary as was afforded the house itself." *United States v. Dunn,* 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987).

In *Oliver,* the Court specifically stated that there is no societal interest in protecting the privacy of activities, such as growing crops, that occur in open fields. Consequently, the Court implicitly held that there are no fourth amendment rights protecting unoccupied or undeveloped areas outside the curtilage, and that the growing of crops does not make an area "occupied" or

"developed" under the open fields doctrine. This decision in effect renders the *Chort* and *Katz* analysis inapplicable to areas outside the curtilage for fourth amendment purposes. *See State v. Young.*

■ Given the *Oliver* decision, the only question to decide under the fourth amendment in this case is whether the fields were within the curtilage of the cabin. If they were not, the fourth amendment does not apply to them, and it does not matter that the officers had no warrant to search the area. Generally, the curtilage is the enclosed space of grounds and buildings immediately surrounding a dwelling house. *State v. Crenshaw,* 105 N.M. at 332, 732 P.2d at 434.

■ In *Dunn,* the United States Supreme Court set out several factors to consider when determining whether a specific location is within the curtilage of a residence. Those factors are as follows: (1) the proximity of the location to the home; (2) whether the same enclosure surrounding the home also encloses the location; (3) the uses to which the location is put; (4) the steps taken to protect the location from observation by passersby. *Id.* We also note that a decision regarding the extent of a curtilage is a question of fact, *see United States v. Berrong,* 712 F.2d 1370 (11th Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984); *see also State v. Russo,* 68 Or.App. 760, 683 P.2d 163 (1984), and for that reason we will not reverse the trial court in this case if the decision is supported by substantial evidence. *See generally State v. Boeglin,* 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983) (denial of a motion to suppress will not be disturbed if supported by substantial evidence; appropriate standard of review is whether law was correctly applied to the facts, viewing the facts in a manner most favorable to the prevailing party).

■ Viewed in the light most favorable to the trial court's decision, the evidence amply supports the court's determination that the marijuana plots were not located within the cabin's curtilage. There was testimony that the closest plot was one hundred to one hundred forty yards from

the cabin, and the second plot was another seventy-five to one hundred yards. This is a substantial distance and most, if not all, courts that have addressed the issue have declined to extend the curtilage that far. *See generally United States ex rel. Saiken v. Bensinger*, 546 F.2d 1292 (7th Cir.1976), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977) (analyzing a number of curtilage cases for distance; figures show no case holding distance of one hundred yards within curtilage; court suggested that anything more than seventy-five feet from a dwelling is outside the curtilage); *compare Oliver v. United States* (fifty yards is a "substantial distance" from the house) *with United States v. Van Dyke*, 643 F.2d 992 (4th Cir.1981) (area 50 yards from house is within curtilage because within enclosure surrounding house and within fifteen feet from lawn extending to home; court discussed *Bensinger* and rejected use of any per se rule in the case before it); *see also Kitzmiller v. State*, 76 Md.App. 686, 548 A.2d 140 (1988) (seventy-five yards in thickly wooded area does not give rise to a reasonable inference that the location is within the curtilage).

In addition to the relatively great distance between the cabin and the first plot, there was no showing that the marijuana fields were within the same enclosure as the cabin. The enclosure would not necessarily have to have been fenced—it might have been sufficient to show the cabin and fields were within the same clearing in the forest. *See State v. Crenshaw* (marijuana plants located in same clearing as cabin, surrounded by dense woods, held to be within cabin's curtilage); *State v. Russo* (plants located in same remote clearing as cabin, surrounded by dense woods and thick underbrush, within cabin's curtilage). No testimony in this case, however, established that the plots were within the same clearing as the cabin, and they were not within the same fenced enclosure. Instead, the plots were accessible from the cabin only by way of a footpath that apparently led through dense woods.

The use to which the plots were put— cultivation of crops—is, after *Oliver*, clearly not one of the "intimate activities of family life" intended to be protected by the fourth amendment. For that reason, this factor also weighs against defendant.

Except for locating the fields in a remote, densely wooded area, defendant took no special precautions to prevent passersby from having access to the plots. Since the fields were not visible from any point except the property itself, this factor might weigh in his favor. We note, however, that some courts would appear to require a person to more strongly demonstrate an unwillingness to expose his property to users such as hunters, hikers, or other passersby. *See, e.g., State v. Dixson/Digby*, 307 Or. 195, 766 P.2d 1015 (1988) (In Banc). There was evidence in this case that the exterior of the tract was not fenced, and there were no "No Trespassing" signs posted. The only evidence of signs was defendant's testimony that on a road leading from the cabin to a mine located on the property there was a sign reading "Keep Out— Blasting," and that there were national forest boundary signs at various places along the property boundary. The sign warning of blasting was apparently not on the boundary, and there is no evidence that the forest service signs warned readers to stay off the private property. We need not decide, however, whether this factor weighs in favor of defendant or against him, because under the circumstances of this case it is not a weighty enough factor to overcome the other three.

■ Defendant points to the fact that the cabin's outhouse was located halfway between the cabin and the closest marijuana field, and that an outhouse certainly involves intimate personal activity. This fact does not mandate a different result. The court could have found that even though the curtilage extended as far as the outhouse, it extended no further. *See United States v. Berrong* (outer limits of curtilage are the outer walls of the extreme outbuildings of the curtilage). Defendant also argues the "use" factor weighs in his favor because there was evidence that family activities such as basketball games, badminton, church picnics, and hiking took place all over the property.

Under this argument, the entire tract would be curtilage, because it is used for family activities. The question is not whether a location is used for any type of family activity. Rather, what the court must determine is whether the activity taking place at the location is the type of intimate activity the fourth amendment is intended to shelter. *Oliver v. United States.* As we have noted above, the cultivation of crops taking place at these two fields is not such an activity. *Id.*

## STATE CONSTITUTION.

■ In defendant's docketing statement, he raised as an issue the protection provided by New Mexico's search and seizure provision as an independent state ground in support of reversal. *See* N.M. Const. art. II, § 10. Defendant maintained that under New Mexico's constitutional provision, a person may have a reasonable expectation of privacy in an area, even if the area is outside the curtilage of a home. When this case was assigned to the general calendar, we specifically directed the parties to brief the issue of the difference, if any, between the scope of the federal fourth amendment and the analogous state constitutional provision. The state's answer brief asserts that this issue was not raised by defendant below or addressed by the trial court. For that reason, argues the state, we should not address it.

We have reviewed the tapes of the suppression hearing and the record proper. In his motion to suppress the evidence, defendant relied on the state constitution, as well as the fourth amendment. However, neither party mentioned the state constitution during the suppression hearing. Defendant's arguments were directed toward the open fields doctrine and its application in isolated, rural areas such as this one. He filed no briefs below discussing the New Mexico constitutional provision or comparing the protection it affords with that available under the federal constitutional provision. At no time did defendant expressly argue the state constitution provided different protection than that provided under the federal constitution.

■ The decision regarding the extent of the protection available under the fourth amendment involves factual questions. We are not satisfied that the factual questions raised and answered in connection with the fourth amendment claim are the only questions that would be relevant in connection with a claim under the state constitution. *See, e.g., State v. Dixson/Digby* (no privacy interest under state constitution if land is left unmarked, unbounded by fence; not enough that it is shielded from view by topographical barriers or vegetation). References to the state constitution, without some discussion or argument concerning the scope of its protections, are not enough to alert the trial court to the issue of a possible difference between the rights afforded by the state constitution and those provided by the fourth amendment. *Cf. Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (references to state constitution in state supreme court opinion were not sufficient to establish adequate and independent state grounds for the decision, and it fairly appeared that the state court rested its decision primarily on federal law; therefore, United States Supreme Court assumed there were no such grounds and that it had jurisdiction). *See also State v. Casteneda,* 97 N.M. 670, 642 P.2d 1129 (Ct.App.1982) (objecting party must advise court specifically of the ground of objection, so that it may rule intelligently).

For these reasons, defendant did not preserve on appeal an argument that the state constitution provides an adequate and independent state ground for reversal. Nevertheless, it may not have been clear from our cases how this issue should have been preserved, and on the facts of this case, we believe it is important as a matter of general public interest to make several observations about the protection against unreasonable search and seizure available under the New Mexico state constitution.

The state constitution contains at least two relevant provisions. Both were cited to the trial court by defendant.

The first is article II, Section 10, which protects "persons, papers, homes and ef-

fects" against unreasonable searches and seizures. While this language is very similar to language contained in the fourth amendment, there is a difference. The state constitution uses the word "homes," while the federal constitution uses the word "houses." Justice Holmes' opinion in *Hester* specifically relied on a common law distinction between "house" and "open fields." The difference in wording between the federal and state constitutions is some evidence that the state constitutional provision may be interpreted to provide broader protection than the federal.

The second relevant state constitutional provision is article II, Section 4. That section provides, in pertinent part: "All persons ... have certain natural, inherent and inalienable rights, among which are the rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of seeking and obtaining safety and happiness." This section contains very general language protecting a variety of rights. We are not prepared in this case to make a definitive statement as to the scope of the protection it provides. The right to protect property, however, is a specific right. Its presence in this clause might provide the basis for additional protection against unreasonable searches and seizures.

The protection available under the fourth amendment for "open fields" depends on concepts that appear to have evolved in areas with very different customs and terrain. In New Mexico, lot sizes in rural areas are often large, and land is still plentiful. Our interpretation and application of the state constitution must take into account the possibility that such differences in custom and terrain gave rise to particular expectations of privacy when the state constitution was adopted. We have in New Mexico already indicated, prior to *Oliver,* some discomfort with the concept of "open fields." In *Chort,* this court held that the defendant had a reasonable expectation of privacy in a fenced garden plot located in the ten-acre tract on which he lived. Relying on the decision of the United States Supreme Court in *Katz,* we held that "[t]he 'open field' doctrine of *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) is not a talismanic solution. The 'open field' doctrine must be viewed in light of the facts of each case[.]" *Id.,* 91 N.M. at 585, 577 P.2d at 893. We noted that the United States Supreme Court was, at that time, increasingly discarding "fictional and procedural barriers resting on property concepts." *Id.*

The test employed in *Chort* to determine whether defendant had a reasonable expectation of privacy in the area searched was from Justice Harlan's concurring opinion in *Katz.* Justice Harlan stated: "there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Id.,* 389 U.S. at 361, 88 S.Ct. at 516. *See also State v. Crenshaw.* Defendant has argued on appeal that under this test his right to be free from an unreasonable search and seizure was violated. We disagree.

In its oral ruling on defendant's motion to suppress, the trial court found that defendant had not demonstrated a reasonable expectation of privacy in the marijuana plots. The record supports this finding. The case before us is analogous to *Dixon/Digby.* Like the defendant in that case, defendant in the present case did not take any steps to assert his interest in keeping the marijuana plots private. Here, defendant placed no signs declaring the property to be private property or declaring the land to be off-limits to trespassers, and he did not erect any substantial fences around the plots. The law enforcement officers were able to walk up and view the plots unimpeded from a public road. Under these circumstances, we need not at this time address further the scope of the New Mexico state constitutional protection against unreasonable searches and seizures. Even if we applied the *Katz* formulation, defendant would not be entitled to the protection he seeks. *See State v. Young.*

CONCLUSION.

Based on the foregoing, we affirm defendant's convictions and the trial court's re-

fusal to suppress the marijuana found in the two plots.

IT IS SO ORDERED.

DONNELLY and CHAVEZ, JJ., concur.