This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                                                          NO. 28,847

**LOUIS GONZALES,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellant

Jacqueline L. Cooper, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Judge.**

The State appeals from an order of the district court granting Defendant's motion to suppress evidence seized during a search of a detached Tuff Shed (the Shed) located on Defendant's daughter's property. The search was conducted pursuant to a warrant authorizing police to search the residence and curtilage of a specific address. The district court found that the search of the Shed was illegal because it was a separate dwelling unit and that Defendant had an expectation of privacy not covered by the search warrant. We conclude that the Shed was within the curtilage of the property and that it was not a separate living space requiring an additional warrant. We reverse.

**BACKGROUND**

Defendant was charged by criminal indictment with one count of trafficking cocaine by possession with intent to distribute, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006); eight counts of child abuse, contrary to NMSA 1978, Section 30-6-1(D)(1) (2005) (amended 2009); and one count of possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001). The charges stem from a search warrant that was executed at a residence in Albuquerque, New Mexico. As a result of the search, police officers found cocaine and paraphernalia in the Shed.

The warrant states, in pertinent part,

> The residence and curtilage to be searched is located in the City of Albuquerque in Bernalillo County. The residence is located at 5743

Fairfax NW. The residence is located on the north side of the street and is a single story residence. The residence is tan stucco in color with brick trim. A two (2) car garage is located in the front of the residence and faces south. The front door to the residence faces east and is encased by a glass door. A silver mailbox is located in front of the residence with the numeric "5743" written on it in black. The numeric "5743" is also located on the south side of the residence and is written in tile.

The affidavit that accompanied the search warrant specifically identified Defendant's daughter and her husband. However, it also stated that numerous other subjects resided at the property and that they were also engaged in the sale of illegal narcotics. As a result, the warrant authorized a search of the property and curtilage and any of the property's numerous residents.

Detective Taylor was the lead officer on August 24, 2006, when the search warrant was executed. She initially proceeded into the property's main residence, while Deputy Martinez went into the backyard. At the time of the search, there were five adults and eight children on the premises. Deputy Martinez found Defendant in the backyard near the Shed with one of the children and directed Defendant to sit down while the Deputy proceeded to search the inside of the Shed. When Detective Taylor arrived at the Shed, the door was unlocked and open. The officers conducted a search of the Shed and found contraband under a pillow and mattress.

Defendant filed a motion to suppress the evidence recovered by the officers during the search of the Shed. Defendant asserted that the evidence obtained violated

his rights under "the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico State Constitution and case law[.]" Specifically, he argued that no probable cause existed to search him and his living space, that the Shed was not curtilage, and that the warrant was based on stale information.

The district court held a hearing on Defendant's motion to suppress and heard testimony from two witnesses: Defendant and Detective Taylor. Defendant testified as to his use of the Shed and about the Shed's layout and physical appearance. Detective Taylor testified regarding the issuance of the search warrant for the property and the search itself. She explained that based on her surveillance of the property and preparation of the affidavit, she considered the Shed to be curtilage. Detective Taylor also testified that the Shed did not have an address plate identifying it as a separate structure from the main house. Further, she understood her authority to search encompassed any outbuilding on the property and "anything that doesn't have a separate address." Detective Taylor testified that the zoning department had gone to the residence and had determined that it was not zoned for two residences. Finally, Detective Taylor testified that, at the time she prepared the affidavit, the property did not appear to have multiple residences.

The district court granted Defendant's motion to suppress only on the question of whether the Shed was within the curtilage of the property. The court explained that

4

the search warrant was valid as to the main house but likened the Shed to a separate rented structure in which a tenant has a reasonable expectation of privacy. Thus, the court found that even "[i]f there had been a bedroom within the home and it was rented to someone, it would still require . . . permission or a warrant to enter that specific bedroom." Based on the testimony, the district court held that the Shed was a separate structure occupied by Defendant, and it was not incorporated into the warrant to search the property and curtilage. Because the court granted the motion to suppress based on Defendant's expectation of privacy in the Shed, it did not rule on the sufficiency of the search warrant, staleness, or probable cause. This appeal followed.

**STANDARD OF REVIEW**

Appellate courts review a district court's decision to suppress evidence based on the legality of a search as a mixed question of fact and law. *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19. "We view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "The legality of a search, however, ultimately turns on the question of reasonableness[,]" which we review de novo. *State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032. "We also note that

5

a decision regarding the extent of a curtilage is a question of fact and for that reason we will not reverse the [district] court . . . if the decision is supported by substantial evidence." *State v. Sutton*, 112 N.M. 449, 452, 816 P.2d 518, 521 (Ct. App. 1991) (citations omitted).

## DISCUSSION

This case requires us to consider only two limited questions. First, we must decide whether the Shed was within the curtilage of the property. If we answer the first question in the affirmative, we must then determine whether the Shed was Defendant's separately controlled living space and, therefore, could be considered non-curtilage requiring another search warrant. We take each question in turn.

## The Shed Was Within the Curtilage of the Property

We have said that, generally, curtilage is "the enclosed space of grounds and buildings immediately surrounding a dwelling house." *State v. Crenshaw*, 105 N.M. 329, 332, 732 P.2d 431, 434 (Ct. App. 1986) (internal quotation marks and citation omitted), *superseded by constitutional amendment on other grounds as stated in State v. Wagoner*, 2001-NMCA-014, 130 N.M. 274, 24 P.3d 306.

> [T]he United States Supreme Court set out several factors to consider when determining whether a specific location is within the curtilage of a residence. Those factors are as follows: (1) the proximity of the location to the home; (2) whether the same enclosure surrounding the home also encloses the location; (3) the uses to which the location is put;

[and] (4) the steps taken to protect the location from observation by passersby.

*Sutton*, 112 N.M. at 452, 816 P.2d at 521 (citing *United States v. Dunn*, 480 U.S. 294, 301 (1987)).

Before turning to the evidence on this issue, we note that the parties do not appear to dispute that the Shed is within the curtilage of the property. Both at the hearing and on appeal, Defendant concedes that "this is not a curtilage case" but rather a question of whether the Shed was his separate, private dwelling. Moreover, the district court does not appear to have specifically ruled that the Shed was without the residence's curtilage. Instead, the district court focused on whether the Shed was similar to a bedroom inside the residence "that was rented to someone else," thereby violating Defendant's reasonable expectation of privacy. For clarity, we briefly address whether the Shed was within the scope of the warrant authorizing the search of the "residence and curtilage."

The testimony established the following. The Shed was located approximately eight to ten feet from the main house. Defendant described it as "a little room in the back of [the] residence." It appears a fence surrounded the entire property. However, there was no testimony that a fence or any other structure separated the Shed from the main house. The Shed did not have running water, a sink, a toilet, or bathing facilities. It did not have its own electricity or heat and was unfinished on the inside.

7

The Shed was physically linked to the residence by extension cords that provided electricity to operate a mini refrigerator and a microwave. Finally, the zoning department stated that the property was not zoned for two residences. Applying the *Dunn* factors, we conclude that the evidence amply supports a determination that the Shed was within the property's curtilage. Thus, the residential address provided in the search warrant implicitly authorized the search of the Shed. Having decided that the Shed was within the curtilage of the residence, we now turn to whether Defendant demonstrated that the Shed was his separate dwelling unit.

**The Shed Was Not a Separate Residence**

At the hearing, Defendant argued that the Shed was "a completely separate entity" and, therefore, outside the scope of the warrant. The district court agreed and, in its oral ruling on Defendant's motion to suppress, likened the Shed to a rented room in the residence requiring either a separate warrant or permission to search. Viewed in the light most favorable to the district court's decision, we conclude that the evidence does not support the court's determination that the Shed was somehow a separate or independent rented, non-curtilage dwelling outside of the scope of the warrant.

As we have noted above, the Shed did not have running water, a sink, a toilet, or bathing facilities. It did not have its own electrical source but was connected to the

8

main house by extension cords that were used to power a mini refrigerator and a microwave. The Shed was unheated, uninsulated, and unfinished on the inside. Further, the Shed did not have a separate address, and the property was not zoned for two separate dwellings.

Defendant testified that he had been living in the Shed for about three weeks. There was no testimony that Defendant paid any rent for the living space. He did not receive mail at the residence or Shed and, in fact, he received his mail at another address entirely. Defendant considered the Shed to be "a little room in the back of [the] residence." Based on these facts, we conclude that the Shed was no more than an extra bedroom that was being used by Defendant at the residence specified in the search warrant. The district court erred in granting the motion to suppress by finding that the Shed was no different than a completely separate rental unit.

Defendant relies on several cases to support his argument that the Shed was his private residence and, therefore, not subject to the search warrant. We find all of those cases distinguishable. The first case Defendant relies on, *Rakas v. Illinois*, 439 U.S. 128, 129-30 (1978), dealt with whether the defendants, who were mere passengers in a car, had standing to challenge the search of a vehicle. Standing is not at issue in this appeal. Defendant also cites to *United States v. Cannon*, 264 F.3d 875 (9th Cir. 2001), and *State v. Monteleone*, 2005-NMCA-129, 138 N.M. 544, 123 P.3d

777. The distinguishing feature in *Cannon* and *Monteleone*, however, is whether officers could search the separate *rented* portion of a home, and the Courts in both cases concluded that the officers could not. *See Cannon*, 264 F.3d at 878-79 (noting that a garage that had been converted into a self-contained rental unit in which the tenant was living was clearly a separate dwelling for which a separate warrant was required); *Monteleone*, 2005-NMCA-129, ¶¶ 1, 4, 21 (holding that officers illegally conducted a search without a warrant of the defendant's separate rented living area). We also do not find persuasive Defendant's reliance on *State v. Ryan*, 2006-NMCA-044, 139 N.M. 354, 132 P.3d 1040. *Ryan* involved several warrantless searches of a building in which the defendant lived and worked. *Id.* ¶ 1. This Court held that, under the particular facts in that case, the defendant did not have standing to challenge the first two warrantless searches for environmental toxins and that officers obtained valid consent from another occupant for the third and fourth searches. *Id.* ¶ 38. Accordingly, we concluded that all of the evidence obtained during the searches was admissible. *Id.* The facts and circumstances in *Ryan* are quite different from the ones in this case, and *Ryan* is therefore inapplicable.

Here, although the district court apparently believed that Defendant rented the Shed from his daughter, there was no evidence presented at the hearing to establish that fact. To the contrary, the testimony and evidence established that Defendant had

10

been living in the Shed for about three weeks, he did not receive mail there, it did not have a separate address, and he was simply one of numerous adults and children who were living on the property. Indeed, as we have noted, officers found five adults and eight children on the property when they executed the warrant. There was not substantial evidence to support the district court's finding that the Shed was like "a bedroom that was rented to someone else," and it erred in granting the motion to suppress on that basis.

We briefly address Defendant's argument raised in the answer brief that the search of the Shed was unconstitutional under Article II, Section 10 of the New Mexico Constitution. Specifically, Defendant contends that there is no good faith exception to an illegal search under New Mexico law. Because we have determined that the search of the Shed, under these facts, was not illegal, we need not reach the issue of whether a good faith exception exists here.

**CONCLUSION**

We reverse the decision of the district court granting Defendant's motion to suppress evidence seized from the Shed to the limited extent that the district court found the Shed was the stand-alone dwelling place of Defendant in which he had an expectation of privacy. We remand for further proceedings, including rulings on any of the other arguments defense counsel raised in support of the motion to suppress.

11

**IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**I CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

**TIMOTHY L. GARCIA, Judge (specially concurring).**

**GARCIA, Judge (specially concurring).**

I agree with the majority that the motion to suppress should be reversed and remanded for further proceedings by the district court. However, I disagree with the analysis utilized by the majority and submit this special concurrence.

As the majority has noted, the district court addressed Defendant's motion to suppress on a very narrow basis and did not rule on the sufficiency of the search warrant, staleness, or probable cause. Majority Opinion, p. 5. At the suppression hearing, only Detective Taylor and Defendant testified. Deputy Martinez, who was the only officer that effectuated the execution of the warrant in the backyard and ultimately searched the Shed, did not testify. Without assuming or addressing other aspects of the warrant that the district court did not rule upon, it is this critical testimony from Deputy Martinez that must be obtained to fully address whether the Shed was properly searched at the time the warrant was executed.

Although the majority has not addressed the United States Supreme Court decision in *Maryland v. Garrison*, 480 U.S. 79 (1987), it sets forth the appropriate analysis to be applied to Defendant's case. In *Garrison*, the Court determined that the warrant was validly issued by the district court based upon the facts known by the officer at the time. *Id.* at 85-86. However, similar to Defendant's case, facts discovered at the time the warrant was executed needed to be taken into account under

13

a proper Fourth Amendment analysis. *Id.* at 80. (recognizing that when the warrant was actually served, it turned out that the third floor was actually divided into two apartments—one occupied by the suspect, and one occupied by the defendant). Even when new factors arise that may create issues regarding the continuing validity of the original warrant, we must "judge the constitutionality of [the officers'] conduct in light of the information available to them at the time they acted." *Id.* at 85. The question then turns to whether "the execution of the warrant violated [the defendant's] constitutional right to be secure in his home." *Id.* at 86.

In *Garrison*, the question was "somewhat less clear" regarding what facts were discovered at the time the warrant was executed *Id*. The Supreme Court explained that the reasonableness of a search pursuant to an overly broad warrant depends upon what the officers knew or should have known at the time the warrant was being executed. *Id.* at 86-88. If the officers recognized or discovered the error in the warrant before they entered the neighbor's premises, they would have been obligated to stop and limit their search to the correct apartment. *Id.* at 86. In addition, had they discovered during the actual search that there were two apartments and they were in the wrong apartment, they would also be required to discontinue the search of the neighbor's apartment and limit their search to the correct apartment. *Id.* at 87.

Thus, under a *Garrison* analysis, the question in the present case is whether

14

Deputy Martinez knew, should have known, or ultimately discovered that there was an error in the original warrant at the time it was being executed upon the Shed. Because Deputy Martinez did not testify, the district court did not apply the analysis set forth in *Garrison* to the facts of this case. What facts Deputy Martinez discovered before entering to search the Shed could have been sufficient to recognize or discover an error in the warrant before he actually entered the Shed, thereby obligating him to stop and limit his search. *See id.* at 86. As a result, this matter should be remanded to the district court to conduct a proper *Garrison* analysis, as well as address the other arguments defense counsel raised in support of the motion to suppress.

 

                                             _____

                                             **TIMOTHY L. GARCIA, Judge**