**Earl Floyd RANDALL, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 66813, 66814.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 14, 1983.

488

Robert V. Holland, Jr., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Ray Elvin Speece and Chuch Hinton, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

Appellant appeals the revocation of his probation for burglary of a building and his conviction for possession of more than 4 ounces of marihuana which was the basis for the revocation. Punishment was assessed by the trial court at four years confinement and a $200 fine in the burglary case and at four years confinement in the marihuana case, sentences to run concurrently.

Appellant complains on appeal that the trial court erred in denying his motion to suppress the marihuana since it was obtained as a result of an illegal arrest. He contends that the arrest and search violated Art. 14.04, V.A.C.C.P. We agree.

The record reflects that on March 24, 1980, Detective J.R. Greve briefly spoke with Manuel Soria, a witness to an attempted burglary of a building which occurred on the night of March 22, 1980. Greve said he talked to Soria for three or four minutes to confirm the report Soria had given to the investigating officers. According to Greve, Soria told him that when he saw a pickup truck drive through the glass door of a store on Westheimer in Houston, he drove his vehicle toward the truck which fled the scene. Soria chased the truck, noted the license number, and described the driver as a white male, with "medium-type" dark hair and a beard. Greve had never received information from Soria before this conversation and had never met him. He did check to make sure that Soria did not have a prior criminal record. None of Soria's

statements were reduced to writing or sworn to in any manner.

The license number given by Soria belonged to a pickup truck registered to appellant. Greve obtained appellant's criminal record and discovered that appellant was on probation for burglary of a building. He also obtained information that appellant had committed a burglary by driving a vehicle through a glass door of a store.

Greve testified that he drove by appellant's home twice on March 23rd and once on the 24th, but the truck was not there and no one was at home. On March 26, 1980, Greve issued a "pick-up" order for appellant's truck and any occupants for "investigation" of burglary. At no time did Greve request or seek an arrest or search warrant.

On March 27, 1980, prior to roll call, Officers Michael Houser and Larry Savat were given a teletype of the "pick-up" order on appellant's truck. Because appellant's home was in their patrol area, they drove by several times. The third time, they saw appellant's truck in the driveway. They then drove two blocks down the street to a telephone and called Greve who described appellant and told them "to remain where we were, to go ahead and keep the pickup in sight and wait to see if it moved, and then at that time stop him whenever it moved, while it was rolling." Pursuant to Greve's instructions, the officers waited about one hour until appellant came out of the house, got into his truck, drove towards the officers, and then turned right on a cross street. The officers followed him for a couple of blocks, then turned on their emergency lights. Appellant pulled over to the side of the road. According to the officers, he made no attempt to flee or escape. Prior to being stopped by the officers, appellant was not speeding, driving erratically, or committing any offense. One of the officers did testify that appellant may have waited "a little longer than usual" at a stop sign, but he conceded that this action was not a traffic violation. They both testified they pulled appellant's car over solely on the basis of Greve's pickup order.

As appellant was pulling his truck to the side of the road, he made a "leaning forward type motion, or a downward type motion." He then exited the truck and walked to the rear of the truck where Savat requested his driver's license and immediately *"told him he was being arrested for questioning of a burglary."* (Emphasis supplied) Appellant was then searched by the officers, handcuffed, and placed in the patrol car. While Savat was placing appellant in the car, Houser searched appellant's vehicle and found two baggies of marihuana under the seat. At the time Houser searched the truck, appellant had been arrested for the "investigation" and was handcuffed and in the patrol car; the officers testified they had no fear for their safety. They also testified that appellant was cooperative and gave them no problems.

Houser drove appellant's pickup and Savat drove the patrol car to the police garage. An inventory search yielded four more baggies of marihuana in a paper sack behind the driver's seat.

Greve also testified that the truck showed no evidence of any damage from crashing through a door and that although Soria had described the driver as having dark hair, appellant has light red hair.

Appellant contends that there was no probable cause to arrest appellant; that even if there were, there was sufficient time to procure a warrant; and that there was no showing that the requirements of Art. 14.04, V.A.C.C.P., were satisfied. The State contends that the warrantless arrest of appellant was permissible by virtue of Art. 14.04, V.A.C.C.P., which provides:

"Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

**490**

A police officer should always obtain an arrest warrant when possible. *Hogan v. State*, 631 S.W.2d 159 (Tex.Cr.App. 1982); *Hardison v. State*, 597 S.W.2d 355 (Tex.Cr.App.1980). Chapter 14, V.A.C.C.P., describes those limited circumstances where an arrest without a warrant is authorized. Under Art. 14.04, V.A.C.C.P., however, a showing that the offender is about to escape is indispensible to support a warrantless arrest. *King v. State*, 631 S.W.2d 486 (Tex.Cr.App.1982); *Hogan*, supra.

It is undisputed that appellant's arrest was made without a warrant. We cannot conclude from the record before us that appellant was about to escape or that it was not possible to secure an arrest warrant, if indeed there was probable cause to arrest appellant for burglary. Greve made no attempt to secure either an arrest or a search warrant and gave no reason for his failure to do so. The alleged burglary or attempted burglary occurred some five days prior to the arrest. The information regarding appellant's possible involvement in the offense was available to Greve for several days. The officers who arrested appellant did so solely on the basis of Greve's "pick up" order. They testified that they had no belief that appellant was attempting to escape. Greve gave no testimony to that effect. There is nothing in the "concrete factual situation spread on the record," *King*, supra, from which it can be deduced that appellant was, in fact, about to escape. The requirements of Art. 14.04 were not met, and the warrantless arrest of appellant was not authorized by any statute.

The State argues that even if Art. 14.04 were not applicable, the circumstances justified a temporary detention for purposes of investigation and, thus, the officers were justified in conducting the initial search in an effort to find a weapon, even though at the time of the search of the vehicle appellant had been removed and arrested. This argument is without merit, however, because appellant was immediately *arrested* for "investigation of burglary". There was no temporary detention in this case. See *Hogan*, supra.

The State further argues that even if the initial arrest and search were illegal, the officers, in the normal course of investigation, would have inevitably discovered the marihuana during the lawful inventory search. The State, in its argument, fails to realize that if the officers were not authorized to arrest appellant, they were not authorized to impound and inventory appellant's automobile. For an inventory to be legal, the impoundment must be lawful. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Thus, the inventory of appellant's vehicle was unlawful.

The arrest of appellant was illegal and *all* the fruits thereof should have been excluded from evidence. Appellant's motion to suppress should have been granted in both causes.

The judgments are reversed and the causes remanded.