790 P.2d 517

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Antonio VASQUEZ, Defendant–Appellant.**

**No. 10922.**

Court of Appeals of New Mexico.

Feb. 22, 1990.

Certiorari Denied April 5, 1990.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BIVINS, Chief Judge.

Convicted for trafficking in a controlled substance and conspiracy to traffic in a controlled substance, defendant appeals. In his brief-in-chief, defendant initially attempted to raise twelve issues. He abandoned one in his reply brief. Since the application of law to the facts concerning most of the issues is clear, only part of this opinion warrants publication. The remainder of the opinion, which is incorporated by reference, will be a memorandum opinion and may not be cited as precedent.

In that part of the opinion to be published, we discuss defendant's claims of trial court error in (1) failing to suppress defendant's statement; and (2) failing to hold an in camera hearing regarding disclosure of the confidential informant. In that portion of the opinion that is not to be published, we discuss two issues not before the court, and four issues answered summarily. We affirm.

The Gallup police received information from a confidential informant (C.I.) that drug dealers from southern Colorado had contacted the C.I. in New Mexico about expanding their operations into this state. The police told the C.I. to set up a deal with the dealers; this was accomplished about one week later. The dealers were to deliver drugs to Gallup, and the C.I. would introduce the police to them.

The C.I. arranged for the deal to take place at a motel in Gallup. Defendant and a friend of his, Donesimo, arrived at the motel in Donesimo's vehicle. The C.I. met defendant at a restaurant across the street from the motel, and a short time later they went into the motel room together while Donesimo waited outside in his vehicle. Police were stationed outside the motel, and the C.I. and defendant were together inside the motel room when other police, posing as buyers, arrived. The C.I. intro-

duced defendant to the undercover police. After the undercover police showed defendant some money, defendant went outside to the vehicle where Donesimo was waiting, removed the drugs, showed them to Donesimo, and went back to the motel room. The C.I. was still in the motel room when defendant came back with the drugs and was also present when defendant either transferred, or discussed transferring, the drugs to the police. The C.I. left the room shortly thereafter, ostensibly for the purpose of getting more money, but actually to signal for the outside police to move in.

As the police outside began to move in, Donesimo began to shoot at them. The police returned fire and killed him. Defendant was then arrested. As defendant left the motel, he unavoidably observed Donesimo lying back with blood on his face. Defendant gave a statement to the authorities later that night. At that time, neither defendant nor the officers present knew that Donesimo had been mortally wounded.

1. Suppression of Defendant's Statement

Defendant claims the statement he gave to the police after his arrest was involuntary, and therefore its use is prohibited. After defendant's arrest but before questioning commenced, the police advised defendant of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). No question has been raised concerning *Miranda* warnings. Rather, the issue concerns whether defendant's statement was voluntary; specifically, whether it was "extracted by fear, coercion, hope of reward or any other improper inducement." *State v. Tindle,* 104 N.M. 195, 198, 718 P.2d 705, 708 (Ct.App.1986).

Defendant refers to testimony at the suppression hearing that indicated that at the time of the statement, he was a Mexican national, illiterate in both English and Spanish, unfamiliar with the legal system in this country, and, most importantly, in a "justified state of overwhelming fear," having passed by his friend, who had just been wounded in a shootout with the police.

While conceding there was no police misconduct or unfairness, defendant nevertheless urges that, under the totality of the circumstances test, his statement should have been suppressed. *See Aguilar v. State,* 106 N.M. 798, 751 P.2d 178 (1988) (adopting totality of the circumstances test for determining voluntariness of confession as set forth in court of appeals opinion in that case).

Because defendant claims the trial court focused only on the lack of police misconduct and did not consider the totality of the circumstances, particularly defendant's state of mind, he urges remand for a correct determination of voluntariness. We reject defendant's contention and hold that under federal constitutional standards, involuntariness requires police coercion, so there is no need to further inquire into the totality of the circumstances when there has been no such coercion.

Reading defendant's issue as a claim under the fourteenth amendment to the United States Constitution, the state argues that, absent coercive police activity, there can be no involuntary statement or confession. The state relies on *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), which held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167, 107 S.Ct. at 522. In *Connelly,* the defendant approached a police officer on the street and told him that he had murdered someone and wanted to talk about it. After the police had given the defendant appropriate *Miranda* warnings, he described the murder and took the police to the scene of the crime. The defendant suffered from chronic schizophrenia and believed the "voice of God" coerced him to confess. The Supreme Court said that the importance or significance of the defendant's perception of coercion flowing from the "voice of God" is inconsequential; it is a matter to which the federal Constitution does not speak. The Court in *Connelly* also observed, "Absent police conduct causally related to the confession, there is

simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* at 164, 107 S.Ct. at 520.

■ We agree with the state that *Connelly* answers defendant's federal constitutional claim. Since there was no police activity that coerced defendant to give his statement, the due process clause of the fourteenth amendment is not implicated.

Whether a different result would be required under our state constitution or state rules of evidence, *see Colorado v. Connelly*, we do not decide. Although defendant asserted state constitutional violations in his motion to suppress, it is apparent he bases his claim on appeal solely on the federal Constitution. He made no reference to the state constitution or state rules of evidence in support of this claim in his brief-in-chief and failed to respond in his reply brief to the state's argument that *Connelly* controls. Furthermore, all cases defendant used in support of his argument were decided under the federal Constitution.

For the reasons stated, we hold the trial court properly denied defendant's motion to suppress.

### 2. Confidential Informant

Defendant claims the trial court erred by failing to hold an in camera hearing on the need to disclose the identity of the C.I. We affirm.

Defendant filed a motion for disclosure pursuant to SCRA 1986, 5–501. At a hearing held on January 19, 1988, however, defense counsel proceeded as if the motion had been made under SCRA 1986, 11–510(C)(2), which gives the state a privilege to refuse to disclose the identity of a confidential informer. To obtain disclosure under that rule, the evidence must show that "an informer will be able to give testimony that is relevant and helpful to the defense of an accused, or is necessary to a fair determination of the issue of guilt or innocence." As the district court ruled, this showing was not made.

■ Defendant argued that, in accordance with *State v. Beck*, 97 N.M. 312, 639 P.2d 599 (Ct.App.1982), an allegation that an informer was the only non-police witness was sufficient of itself to show that the testimony of the C.I. was necessary to a fair determination of the issue of guilt or innocence. We disagree.

■ Defendant confessed to the crime. We have already held that the confession was voluntary and admissible. At the district court hearing, defendant did not disavow the confession in any respect. When asked for specifics as to how the C.I. could provide testimony helpful to defendant, defense counsel referred only to an entrapment defense. The confession makes clear, however, that the C.I. did not entrap defendant. According to the confession, defendant had received the drugs from a different individual. (Defendant's brief on appeal suggests that the C.I. present at the time of the transaction was the same person who delivered the drugs to defendant; but that contention is based on a clear misreading of the confession.) Defense counsel did not explain how the C.I. could assist in establishing that the individual who delivered the drugs to defendant was an agent of the state who had entrapped defendant.

Thus, although an in camera hearing may have been advisable, we hold that the district court did not abuse its discretion in finding that defendant did not make a showing adequate to require an in camera hearing.

### Conclusion

We affirm defendant's convictions for trafficking in a controlled substance and conspiracy to traffic in a controlled substance.

IT IS SO ORDERED.

DONNELLY and HARTZ, JJ., concur.