827 P.2d 136

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Frank Martin CAMPOS, Defendant–Appellant.**

**No. 12482.**

Court of Appeals of New Mexico.

Oct. 22, 1991.

Certiorari Granted Dec. 4, 1991.

---

Sammy J. Quintana, Chief Public Defender, Gina Maestas, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

DONNELLY, Judge.

Defendant appeals his conviction for possession of heroin, contrary to NMSA 1978, Section 30–31–23(B)(4) (Repl.Pamp.1989). We address three issues: (1) whether the trial court erred in failing to require the state to disclose the identity of a confidential informant; (2) whether the trial court erred in failing to suppress the evidence seized pursuant to the stop, arrest, and search of defendant; and (3) whether the trial court erred in denying defendant's motion for a mistrial based on alleged improper prosecutorial comments. We affirm.

FACTS

Acting on information received by a confidential informant that defendant was going to deliver heroin to a location on East Deming Street in Roswell on December 8, 1989, Lieutenant Luis Lara of the Chaves County Sheriff's Office, together with other officers, set up surveillance of the area. The confidential informant also told Lara that defendant would be driving to the location in either a silver and black pickup truck or a small blue car.

Defendant had been the subject of an ongoing investigation by law enforcement officers for approximately a year, based upon information received by Lara indicating that defendant was engaged in illicit drug activity. From Lara's prior surveillance of defendant, he was also aware that defendant frequently used either the pickup or the automobile identified by the confidential informant.

On the morning in question, defendant was observed by the officers as he approached the location described by the confidential informant as the place where the heroin was to be delivered. The officers stopped defendant's car and ordered him out of his vehicle. Defendant was then arrested without a warrant, handcuffed, and searched. The search of his person and the vehicle he was driving resulted in the seizure of seven packages of heroin. Thereafter, defendant was charged with possession of heroin with intent to distribute.

Prior to trial, defendant moved pursuant to SCRA 1986, 11–510 for disclosure of the identity of the confidential informant who had provided sheriff's deputies with the information leading to his arrest. The trial court conducted in camera examinations of both Lara and the confidential informant and thereafter denied the motion. The trial court concluded that the information relied upon by the officers was "shown to be reliable" and that the stop, arrest, and subsequent search of defendant, under the cir-

cumstances, was lawful and proper. Based on its findings and conclusions, the trial court ruled that the state was not required to disclose the identity of the confidential informant.

Defendant also moved to suppress the evidence seized pursuant to both his warrantless arrest and the ensuing warrantless search. At the hearing on the motion, Lara testified that the information given by the confidential informant indicated that defendant would be transporting heroin on the morning in question at approximately 8:00 a.m., following one of two routes, and that based upon Lara's previous contacts with the confidential informant, the informant was known to be both reliable and credible. Following the denial of defendant's motion to suppress, the case proceeded to trial. At the conclusion of the state's presentation of its case-in-chief, the trial court granted defendant's motion for a directed verdict on the charge of intent to distribute a controlled substance. At this juncture, defendant entered a plea of guilty to one count of possession of heroin, but reserved the right to appeal all pretrial issues.

DISCUSSION

### I. *In Camera Hearing*

Defendant first argues that the trial court erred in failing to require disclosure of the identity of the confidential informant pursuant to Evidence Rule 11–510(C)(2). Under this rule, the trial court may order the identity of the confidential informant to be disclosed if it appears that the "informer will be able to give testimony that is relevant and helpful to the defense of an accused, or is necessary to a fair determination of the issue of guilt or innocence...." *Id.* *See also State v. Vasquez,* 109 N.M. 720, 790 P.2d 517 (Ct.App. 1990).

■ Rule 11–510 provides a method for balancing the state's interest in protecting the free flow of information against a defendant's right to prepare his defense. *State v. Perez,* 102 N.M. 663, 699 P.2d 136 (Ct.App.1985); *State v. Beck,* 97 N.M. 312, 639 P.2d 599 (Ct.App.1982). Regardless of the circumstances, however, there is no absolute right to disclosure of the identity of the confidential informant. *See McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *see also State v. Perez; see generally* 1 W. LaFave, *Search and Seizure* § 3.3(g) (1987). Even where the court determines that disclosure is proper, the state may elect to dismiss the pending charge rather than disclose the identity of the informant. *State v. Perez.*

■ On appeal, we review the trial court's decision denying disclosure of the identity of a confidential informant for an abuse of discretion. *See State v. Robinson,* 89 N.M. 199, 549 P.2d 277 (1976). As observed in *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 629, 1 L.Ed.2d 639 (1957), an ad hoc balancing test is applied in determining whether the trial court properly exercised its discretion and "[w]hether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

■ Defendant contends disclosure of the confidential informant's identity is necessary to accord him fundamental due process. Merely providing information concerning an illegal drug transaction does not, however, without some additional showing by defendant, mandate disclosure of the identity of the confidential informant. *See State v. Perez.* In the instant case, the record indicates that the confidential informant was not present at the time defendant was stopped, arrested, and searched; thus, the confidential informant was not a witness to any sale or defendant's possession of the controlled substance found at the time of his arrest. *See id.* Instead, as indicated by evidence presented at the in camera hearing, the confidential informant conveyed information that defendant had been distributing controlled substances and that he would be engaging in illicit drug activity on the morning that he was apprehended. Testimony presented at the in camera hearing

supports the trial court's determination denying defendant's motion for disclosure. Based upon the evidence presented, the trial court could properly conclude that the informant did not possess information relevant to the preparation or presentation of his defense, or which would exculpate defendant from the charge against him. *See Schmid v. State,* 615 P.2d 565 (Alaska 1980); *see also United States v. Zamora,* 784 F.2d 1025 (10th Cir.1986). Defendant failed to establish either that (1) the informer would be able to give testimony that is relevant and helpful to his defense, or (2) that disclosure is necessary to a fair determination of defendant's guilt or innocence. *State v. Vasquez; State v. Hernandez,* 104 N.M. 268, 720 P.2d 303 (Ct. App.1986).

■ Where an accused, under Rule 11–510(C)(2), challenges the basis for his warrantless arrest resulting from information provided by a confidential informant, an in camera hearing permits the trial court to determine whether the confidential informant was reliable and whether the police officer had a reasonable basis to rely upon the information conveyed. *See State v. Cervantes,* 92 N.M. 643, 593 P.2d 478 (Ct. App.1979). The mechanism of the in camera hearing also gives the trial court the opportunity to examine how the confidential informant became aware of the information divulged. *Id.* Therefore, the trial court is able to accurately assess the validity of the basis for the arrest, and law enforcement officials are prevented from being the final arbiters of probable cause in situations where confidential information is relied on to support a claim that probable cause existed to effect an arrest. *See State v. Beck.* Based on the record before us, we cannot say the trial court abused its discretion in refusing to require the state to disclose the confidential informant's identity under Rule 11–510(C)(2). *See State v. Robinson.*

■ Next, we also examine whether disclosure of the confidential informant was required under subsection (C)(3) of Rule 11–510. This subsection provides in applicable part:

**Legality of obtaining evidence.** If information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible, he may require the identity of the informer to be disclosed.

In reviewing defendant's contentions raised under this portion of the rule, the trial court is required to examine the reasonableness of the belief of the individual who effectuated the arrest and obtained the evidence in question, based upon the information received from the confidential informer. *See State v. Cervantes.* Our reading of defendant's motion indicates that he relied principally upon the provisions of Rule 11–510(C)(3) in seeking disclosure of the confidential informant because his motion refers to his desire to question Lara concerning the nature of the information the officer received from the informant leading to the stop, arrest, and the ensuing search of defendant and his vehicle. Defendant argues that by not disclosing the identity of the confidential informant, he was denied the full and fair opportunity to defend himself, and thus the proceedings against him lacked fundamental fairness. In furtherance of this contention, he reasons that without an order of disclosure, he was deprived of the opportunity to establish that the officers lacked any reliable information or probable cause to justify his stop and warrantless arrest. Alternatively, he argues that if a reasonable basis for providing the information did exist, the informant was not reliable and that it was essential that defense counsel have access to the information given by the confidential informant in order to fully cross-examine Lara concerning this issue. We find this argument unpersuasive.

■ The trial court conducted in camera hearings of both Lara and the confidential informant. In order to determine whether the trial court abused its discretion in refusing to require disclosure, *see State v. Robinson,* the appellate court will review the in camera proceedings to determine

whether the true identity of the confidential informant was revealed and whether the trial court conducted a thorough and vigorous investigation in order to determine the veracity of the information supplied to the police. *See State v. Wolken,* 103 Wash.2d 823, 700 P.2d 319 (1985) (en banc). In reviewing such proceedings, this court scrutinizes the record in order to determine whether the trial court conducted a vigorous and thorough examination of the confidential informant and other witnesses in order to ensure that the balancing process was fairly applied. *See generally McCray v. Illinois.*

■ At the in camera hearing conducted herein, the trial court inquired into the basis for the informant's knowledge of defendant's drug selling activities, other information given in the past which led to the arrest of individuals involved in illicit drug activity, and the details of Lara's prior investigation and surveillance of defendant. Reviewing the in camera proceedings and other matters in the record in their entirety, we determine that the evidence before the trial court was sufficient to enable it to properly balance defendant's right to a fair trial and the state's interest in protecting its availability of information. The trial court did not abuse its discretion in refusing to order disclosure of the confidential informant under Rule 11–510(C)(3).

When we assigned this case to the general calendar, we asked the parties to address other issues. In view of our disposition, it is not necessary to address those issues.

## II. *Denial of Motion to Suppress*

■ Under this issue, defendant argues that the trial court erred in failing to suppress the evidence resulting from the search following his stop and arrest. He also contends that under the circumstances here, in order to uphold the validity of his warrantless arrest, the state was required to establish that the arresting officer had probable cause to believe that a felony had been or was about to be committed by defendant and, additionally, that exigent circumstances existed for making a warrantless arrest. *See State v. Martinez,* 94

N.M. 436, 612 P.2d 228, *cert. denied,* 449 U.S. 959, 101 S.Ct. 371, 66 L.Ed.2d 226 (1980); *Randall v. State,* 656 S.W.2d 487 (Tex.Crim.App.1983) (en banc). We concur with the first portion of defendant's argument concerning the necessity for establishing the existence of probable cause to carry out a warrantless arrest; however, we disagree that under the United States Constitution, amendments IV and XIV, and Article II, Sections 10 or 18 of the New Mexico Constitution, exigent circumstances were required to be shown as a prerequisite to effecting a valid warrantless arrest of defendant.

■ This court will not disturb a trial court's denial of a motion to suppress if it is supported by substantial evidence, unless it also appears that the ruling of the court was erroneously premised upon the law or facts. *State v. Boeglin,* 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983); *see also State v. Segotta,* 100 N.M. 18, 665 P.2d 280 (Ct. App.), *rev'd on other grounds,* 100 N.M. 498, 672 P.2d 1129 (1983). In this case, we do not address the issue of whether the state constitution accords a greater breadth of protection against unreasonable searches and seizures than that provided under the federal constitution. *See State v. Sutton,* 112 N.M. 449, 816 P.2d 518 (Ct.App.1991). Defendant has not argued either at trial or on appeal that the state constitutional protections against unreasonable searches or seizures have been or should be interpreted differently from those contained in the federal constitution. Moreover, defendant's briefs do not indicate or cite to the record showing where defendant argued at trial that the state constitutional provisions against unreasonable searches and seizures should be construed differently from those contained in the United States Constitution. Under these circumstances, no issue asserting that a distinction exists between the state constitution and federal search and seizure provisions has been preserved for review on appeal. *Id.*

A law enforcement officer is empowered to arrest an individual without a warrant if, at the time of the arrest, the officer has

probable cause to believe that a crime was committed by the person arrested or he has probable cause to believe that the individual has committed, or is about to commit, a felony. *See United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (under common law and fourth amendment to United States Constitution, peace officer may arrest without a warrant for a felony committed in his presence or where officer has probable cause to believe the person arrested has committed or is committing a felony); *State v. Jones*, 96 N.M. 14, 627 P.2d 409 (1981) (warrantless arrest is valid where officer has probable cause to believe that a felony has been committed by the person he arrests); *Rodriquez v. State*, 91 N.M. 700, 580 P.2d 126 (1978) (if officer believes, and has good reason to believe, the person has committed or is about to commit a felony, warrantless arrest may be effected); *State v. Deltenre*, 77 N.M. 497, 424 P.2d 782 (1966) (search of the defendant incident to warrantless arrest held valid where arrest was based upon probable cause to believe that the defendant had committed or was committing a felony), *cert. denied*, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967); *State v. Garcia*, 100 N.M. 120, 666 P.2d 1267 (Ct.App.1983) (law enforcement officer may make valid warrantless arrest where he has probable cause to believe individual arrested has committed a felony); *State v. Kaiser*, 91 N.M. 611, 577 P.2d 1257 (Ct. App.1978) (where probable cause shown to exist indicating that the defendant has committed a felony or that a felony is being committed, need for police officer to obtain arrest warrant is obviated).

Defendant asserts that our supreme court in *Martinez* held that a warrantless arrest and ensuing search based on a radio dispatch to a police officer "must contain as high a standard showing probable cause and reliability as that required to support a warrant, in addition to exigent circumstances which would justify proceeding without a warrant." 94 N.M. at 440, 612 P.2d at 232. We agree that a law enforcement officer must demonstrate the existence of probable cause in order to validate an arrest made without a warrant, how-ever, we do not read *Martinez* as modifying the general rule concerning the requirements necessary to effect a warrantless arrest articulated in *Rodriquez* and *Deltenre*. Moreover, *Jones*, decided by our supreme court after *Martinez*, sets forth the applicable rule in such cases.

Determination of whether probable cause exists for a peace officer to effect a warrantless arrest necessarily focuses upon the issue of whether the facts and circumstances known to the officer, or of which he has reasonably trustworthy information, would justify a person of reasonable caution to believe that the person arrested has committed or is committing an offense. *State v. Jones; Rodriquez v. State; State v. Rondeau*, 89 N.M. 408, 553 P.2d 688 (1976); *State v. Selgado*, 76 N.M. 187, 413 P.2d 469 (1966); *see also State v. Copeland*, 105 N.M. 27, 727 P.2d 1342 (Ct.App. 1986). In *Jones*, the court considered a case in which the initial information possessed by the arresting officer indicating that the defendant had committed a crime originated from an anonymous informant's tip. The *Jones* court reiterated the test necessary to establish the existence of probable cause to effect a valid warrantless arrest and observed that such "arrest may be based upon information from other persons where the information is corroborated or verified to an extent sufficient to establish the informant's credibility." 96 N.M. at 15, 627 P.2d at 410.

In reviewing the propriety of the trial court's ruling on a motion to suppress, the appellate court is not limited to the record of the proceedings held in conjunction with the motion, but, rather, may review the entire record to determine if the officer making the arrest acted upon probable cause supported by facts indicating that the information given by the informant was reliable. *See State v. Martinez*. The decision of a trial court as to the reasonableness of a warrantless arrest will not be disturbed on appeal if facts are found to exist in the record supporting the trial court's determination that the arrest was constitutionally reasonable and such conclusion is supported by substantial evi-

dence. *State v. Deltenre; see also State v. Martinez.* In order to effect a valid arrest, the officer need not have a knowledge of evidence sufficient to establish the guilt of an accused beyond a reasonable doubt; a showing of probable cause is sufficient. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *see also State v. Gibby,* 78 N.M. 414, 432 P.2d 258 (1967). Information given by an informant, which has been verified, or a showing that facts exist indicating the reliability of the informant, provides a basis to establish the existence of probable cause to believe that a felony has been or is being committed by an accused. *State v. Deltenre; State v. Barton,* 92 N.M. 118, 584 P.2d 165 (Ct.App. 1978).

We find defendant's reliance on out-of-state authority unpersuasive regarding the necessity of making a showing of the existence of exigent circumstances in order to effect a valid warrantless arrest. As the state correctly points out, West Virginia courts, although requiring a showing of exigency, have limited the requirement of exigency to warrantless arrests in a person's residence. *See, e.g., State v. Howerton,* 174 W.Va. 801, 329 S.E.2d 874 (1985); *State v. Craft,* 165 W.Va. 741, 272 S.E.2d 46 (W.Va.1980). *Randall* is similarly inapposite. In *Randall,* the court's decision turned on its determination that compliance was necessary with a statutory requirement of exigency before a warrantless arrest could be justified.

As observed by the Court in *United States v. Watson,* 423 U.S. at 421–23, 96 S.Ct. at 827:

> The balance struck by the common law in generally authorizing felony arrests on probable cause, but without a warrant, has survived substantially intact. It appears in almost all of the States in the form of express statutory authorization. . . .

> This is the rule Congress has long directed its principal law enforcement officers to follow. Congress has plainly decided against conditioning warrantless arrest power on proof of exigent circum-

stances. Law enforcement officers [however] may find it wise to seek arrest warrants where practicable to do so, and their judgments about probable cause may be more readily accepted where backed by a warrant issued by a magistrate. [Footnote omitted.]

The information from both the open court hearing on the motion to suppress and that given at the in camera hearings discloses the existence of substantial evidence from which the trial court could reasonably determine that Lara had probable cause to believe that defendant was transporting heroin at the time of his arrest. At the in camera hearing, Lara testified that he had been investigating defendant's alleged involvement in distributing illicit drugs for approximately a year. Lara further stated that he had previously set up a controlled buy of illegal drugs from defendant and the purchase was successfully completed, but he had not made an arrest because the circumstances surrounding such sale did not allow him to personally witness the sale. Lara further testified that he had previously received specific information from the confidential informant that indicated the informant's reliability. As discussed previously, the court also conducted an in camera hearing with the confidential informant. The confidential informant testified to facts and details of defendant's involvement in both past and current illicit drug activities. This information provided a valid basis for the trial court's determination that the informant had provided credible and reliable information to Lara in the past. In sum, we conclude the record supports the trial court's ruling finding that probable cause existed to justify the officers in effecting defendant's warrantless arrest and the search incident to his arrest. *See State v. Martinez; State v. Copeland.*

### III. *Motion for Mistrial*

Finally, defendant argues that the trial court erred in denying his motion for a mistrial due to what he alleges were improper comments on his silence by the prosecutor. However, it is clear from both the original and amended judgment and sen-

tence that defendant reserved the right to appeal only pretrial issues pursuant to his guilty plea. Therefore, we determine that this issue was not properly preserved in the trial court and we decline to review it. *See* SCRA 1986, 12–213(A)(3) (Cum.Supp.1991); *State v. Ball*, 104 N.M. 176, 718 P.2d 686 (1986).

CONCLUSION

We affirm defendant's conviction.

IT IS SO ORDERED.

MINZNER, J., concurs.

APODACA, J., dissents.

APODACA, Judge, dissenting.

I respectfully dissent. The majority premises its decision on a holding that defendant's warrantless arrest was lawful solely because of the existence of probable cause and thus concludes that the trial court's refusal to suppress the evidence obtained in the eventual search was proper. I submit that this holding fails because it totally ignores a crucial fact—that the essential probable cause did not arise at the time of arrest but existed *the day before* the arrest, when the officer received the incriminating information from the confidential informant. The trial court later held at the in-camera hearing that the informant was a reliable source. Thus, exigent circumstances, which I maintain have always been required by our case law under facts such as present in this appeal, were nonexisting in this appeal. Consequently, I would hold that the officer's failure to obtain a search or arrest warrant, when he had almost a full day to do so, was unreasonable and thus, the evidence seized during the search should have been suppressed.

Because I would reverse on this issue, it is not essential to reach the other issues raised by defendant. However, I wish to briefly comment on the majority's conclusory discussion of the trial court's refusal to order disclosure of the confidential informant's name under SCRA 1986, 11–510(C)(2) and (3). It appears to me that disclosure of the confidential informant's identity would have eventually established that the officers possessed the necessary information the day before the arrest to obtain a warrant. Without this information, defense counsel was unable to adequately cross-examine the officer or challenge the legality of the warrantless arrest and seizure. Defense counsel found himself groping in the dark because he did not have access to the in-camera hearing transcript. But this court did have such access, and the transcript indicates, at least to me, that probable cause existed the prior day. Thus, this information would seem to be "relevant and helpful to the defense of the accused." SCRA 1986, 11–510(C)(2).

Additionally, although the majority acknowledges the need to balance the defendant's right to a fair trial and to due process with the state's need to maintain the free flow of information, it completely fails to discuss how this balance was reached. Instead, the majority simply makes the conclusory remark that it has determined "that the evidence before the trial court was sufficient to enable it to properly balance defendant's right to a fair trial and the state's interest in protecting its availability of information."

Ironically, the majority relies on the trial court's conclusion after the in-camera hearing that the information provided by the confidential informant gave the officers probable cause to make the arrest. This underscores the flimsiness of the officer's excuse that he did not seek an arrest or search warrant because he believed the informant's information had to be corroborated. If the information provided probable cause for a warrantless arrest or search, it provided probable cause for a search or arrest warrant, and there was no need for corroboration. It is thus clear to me that the officer's reason for not obtaining a search warrant was a subterfuge and inexcusable, and as such, should not be tolerated in light of constitutional requirements.

DEFENDANT HAS ADEQUATELY PRESERVED THE STATE CONSTITUTIONAL ISSUE

The majority declines to address the issue of whether Article II, section 10 of our

state constitution provides greater protection than the fourth amendment of the federal constitution. It bases its refusal to do so on the conclusion that defendant failed to preserve the issue. The majority relies on *State v. Sutton*, 112 N.M. 449, 816 P.2d 518 (Ct.App.1991) to support its assertion that defendant's failure to argue to the district court exactly how our state constitution provided greater protection failed to preserve the issue. Yet, *Sutton* cites no New Mexico authority for its proposition that a defendant must spell out to the trial court how and why a state constitutional provision should be interpreted differently from the analogous federal provision, and I know of none. I submit that defendant's mere reliance on the state constitutional provision both at trial and on appeal is sufficient to preserve the issue for our consideration. I believe defendant has met this requirement, and it is now incumbent upon us to address the state constitutional question.

However, even if there is some question that defendant did not preserve the issue or properly raise it on appeal, this court is free to consider a question of law not raised in the trial court if it is an issue "of a general public nature affecting the interest of the state at large." *Tiffany Constr. Co. v. Bureau of Revenue*, 96 N.M. 296, 299, 629 P.2d 1225, 1228 (1981). *See also State v. Sutton; In re Parental Rights to R.W.*, 108 N.M. 332, 772 P.2d 366 (Ct.App. 1989). The issue of whether Article II, section 10 of the New Mexico constitution requires both probable cause and exigent circumstances before a warrantless arrest is authorized is a question of a general public nature that merits the attention of this court.

## RIGHTS GRANTED BY STATE CONSTITUTION ARE SEPARATE FROM THOSE GRANTED BY FEDERAL CONSTITUTION

Defendant argues that the arrest without a warrant was unconstitutional under both the federal *and* New Mexico constitutions. Although the majority acknowledges that defendant bases his argument for reversal both on state and federal constitutional provisions, I submit that its holding is solely premised on federal guidelines expounded by the United States Supreme Court in interpreting only federal constitutional provisions. Even so, the majority relies on several New Mexico cases for its holding that probable cause alone, without exigent circumstances, is sufficient to support a warrantless arrest or search. With all due respect, I submit that in so doing, the majority has misconstrued the true tenor of such holdings and consequently has misapplied those holdings to the facts peculiar to this appeal.

The majority initially relies on *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), to determine that probable cause absent exigent circumstances justifies a warrantless arrest. That may or may not be true under federal constitutional standards. Granted, *Watson* has been relied on by courts of other states for the same purpose. However, it is not enough to test the lawfulness of a warrantless search or arrest under federal constitutional standards alone; it must be tested against the standards required by the New Mexico constitution as well. As noted by former United States Supreme Court Justice William J. Brennan, Jr.:

> [S]tate courts cannot rest when they have afforded their citizens the full protections of the federal Constitution. State constitutions, too, are a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law.

William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights*, 90 Harv.L.Rev. 489, 491 (1977). Many states have relied on their own constitutions to afford their citizens greater protections than those granted by the federal constitution. *See, e.g., Zehrung v. State*, 569 P.2d 189 (Alaska 1977); *People v. Disbrow*, 16 Cal.3d 101, 545 P.2d 272, 127 Cal.Rptr. 360 (1976); *State v. Brisendine*, 13 Cal.3d 528, 531 P.2d 1099, 119 Cal.Rptr. 315 (1975); *State v. Kaluna*, 55 Hawaii 361, 520 P.2d 51 (1974); *State v. Santiago*, 53 Hawaii 254, 492 P.2d 657 (1971); *State v. Johnson*, 68 N.J. 349, 346 A.2d 66 (1975);

*People v. Griminger,* 529 N.Y.S.2d 55, 71 N.Y.2d 635, 524 N.E.2d 409 (1988); *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (Pa.1975); *State v. Jacumin,* 778 S.W.2d 430 (Tenn.1989); *State v. Jackson,* 102 Wash.2d 432, 688 P.2d 136 (1984). *See also* 90 Harv.L.Rev. at 498–500. The United States Supreme Court itself has recognized that states are free to grant greater rights and liberties than is required by federal constitutional law to its own citizens. *See Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975) ("a State is free *as a matter of its own law* to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards") (emphasis in original); *Cooper v. California,* 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967).

Our own supreme court has asserted the independence of the New Mexico constitution and held that federal precedent is not controlling in interpreting state constitutional provisions. In *Chapman v. Luna,* 102 N.M. 768, 769, 701 P.2d 367, 368, *cert. denied,* 474 U.S. 947, 106 S.Ct. 345, 88 L.Ed.2d 292 (1985), the court stated: "Although the equal protection clauses of the United States Constitution and the New Mexico Constitution have been interpreted similarly, ... they nevertheless constitute independent rights and protections." *See also State v. Aragon,* 109 N.M. 197, 784 P.2d 16 (1989) (holding that state constitution guaranteed trial by an impartial jury independent of the U.S. constitution); *State ex rel. Serna v. Hodges,* 89 N.M. 351, 552 P.2d 787 (1976) ("We are not bound to give the same meaning to the New Mexico Constitution as the United States Supreme Court places upon the United States Constitution, even in construing provisions having wording that is identical, or substantially so, 'unless such interpretations purport to restrict the liberties guaranteed the entire citizenry under the federal charter.'" 89 N.M. at 356, 552 P.2d 787, quoting *People v. Brisendine,* 13 Cal.3d at 541, 531 P.2d at 1112, 119 Cal.Rptr. at 328); *State v. Deltenre,* 77 N.M. 497, 424 P.2d 782, *cert. denied,* 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967) (tested validity of war-rantless arrest under both federal constitutional and state constitutional standards).

Our supreme court has explicitly held that federal precedent is not controlling in interpreting Article II, section 10 of our state constitution. *See State v. Cordova,* 109 N.M. 211, 212 n. 1, 784 P.2d 30, 31 n. 1 (1989) ("Because our holding today is based on our interpretation of the New Mexico Constitution, we do not consider as controlling the principles announced in *Gates* or other federal precedent cited in the body of this opinion, albeit the reasoning of those opinions informs our result."). In *Cordova,* our supreme court rejected the "totality-of-the-circumstances" test enunciated by the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), for reviewing the validity of a search warrant based on affidavits containing hearsay information. Instead, *Cordova* retained the two-prong test formulated by the United States Supreme Court in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Our supreme court concluded that its "previous reading of this rule comports both with its plain meaning and with the requirement of the New Mexico constitution that 'no warrant * * * shall issue * * * without a written showing of probable cause, supported by oath or affirmation.'" *State v. Cordova,* 109 N.M. at 212, 784 P.2d at 31; N.M. Const. art. II, § 10.

Thus, in New Mexico, "the decisions of [the United States Supreme] Court are not, and should not be, dispositive of questions regarding rights guaranteed by counterpart provisions of state law. Accordingly, such decisions are not mechanically applicable to state law issues, and state court judges and the members of the bar seriously err if they so treat them." 90 Harv. L.Rev. at 502. For these reasons, we are compelled to analyze whether a warrantless arrest made only on probable cause under the specific facts of this appeal is lawful under Article II, section 10 of the New Mexico constitution.

NEW MEXICO CONSTITUTION RE-
QUIRES EXIGENT CIRCUMSTANCES
TO JUSTIFY PROCEEDING WITHOUT A
WARRANT

New Mexico has followed the general rule contained in both the fourth amendment of the federal constitution and Article II, section 10 of the New Mexico constitution that a warrant is normally required to authorize a search or an arrest. In *State v. Kaiser*, 91 N.M. 611, 577 P.2d 1257 (1978), our supreme court stated that "[a] warrantless search is per se unreasonable, subject to a very few, carefully delineated and limited exceptions." *Id.* at 613, 577 P.2d at 1259, quoting *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Ledbetter*, 88 N.M. 344, 540 P.2d 824 (Ct.App.1975); *State v. Gorsuch*, 87 N.M. 135, 529 P.2d 1256 (Ct.App.1974). It continued:

> "Exigent circumstances" are summarized ... as follows:
>
> "... (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that 'efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged....'" [citations omitted]

*Id.*, quoting *U.S. v. Rubin*, 474 F.2d 262 (3d Cir.1973), *cert. denied*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). *See also State v. Corneau*, 109 N.M. 81, 781 P.2d 1159 (Ct.App.1989).

I see no reason to distinguish between the law regarding warrantless searches and warrantless arrests. Article II, section 10 of the New Mexico Constitution states "[t]he people shall be secure ... from unreasonable searches and seizures, and no warrant shall issue without describing the place to be searched, or the *persons* or things to be seized, nor without a written showing of probable cause...." N.M. Const. Art. II, § 10. (Emphasis added.) This provision grants the right to the people to be free of *both* unreasonable searches and seizures, and does not distinguish between them. As noted by Justice Marshall, "A warrant is required in the search situation to protect the privacy of the individual, but there can be no less an invasion of privacy when the individual himself, rather than his property, is searched and seized. Indeed, an unjustified arrest that forces the individual temporarily to forfeit his right to control his person and movements and interrupts the course of his daily business may be more intrusive than an unjustified search." *United States v. Watson*, 423 U.S. 411, 446, 96 S.Ct. 820, 839, 46 L.Ed.2d 598 (1976) (Marshall, J. dissenting).

New Mexico courts have thus scrutinized warrantless searches and arrests to determine that they were justified by a necessary exception to the warrant requirement. *See, e.g., State v. Calvillo*, 110 N.M. 114, 792 P.2d 1157 (Ct.App.1990) (danger that defendant would fire more shots justified unauthorized entry into house to seize gun); *State v. Copeland*, 105 N.M. 27, 727 P.2d 1342 (Ct.App.1986) (probable destruction of evidence justified warrantless entry into motel room and arrest of defendant); *State v. Chavez*, 98 N.M. 61, 644 P.2d 1050 (Ct.App.1982) (possible escape of suspect justified warrantless entry and arrest within 20 minutes of officers' interviewing rape victim); *State v. Bramlett*, 94 N.M. 263, 609 P.2d 345 (Ct.App.1980) (search of vehicle left parked on the street for several hours did not fall into "inventory search" exception to warrant requirement), *overruled on different issue, Armijo v. State Through Transp. Dept.*, 105 N.M. 771, 737 P.2d 552 (Ct.App.1987).

A common thread running through these exceptions is exigency. *See State v. Capps*, 97 N.M. 453, 454, 641 P.2d 484, 485 (1982) ("Two well recognized exceptions to obtaining a search warrant are: search incident to an arrest and the automobile exception.... The common element running through these two exceptions is exigency.") Our supreme court stated in *State v. Mar-*

*tinez,* 94 N.M. 436, 612 P.2d 228, *cert. denied,* 449 U.S. 959, 101 S.Ct. 371, 66 L.Ed.2d 226 (1980), that:

> [W]e state with great caution that an arrest or search warrant must be supported by affidavit, when based upon information from an informant, setting forth facts showing the reliability of the informant and probable cause. *We reiterate that the radio dispatch upon which a warrantless arrest or search is based must contain as high a standard showing probable cause and reliability as that required to support a warrant, in addition to exigent circumstances which would justify proceeding without a warrant. It must not be forgotten that in all cases the ultimate question is whether the search and seizure was reasonable.* (Citation omitted.) (Emphasis added.)

*State v. Martinez* 94 N.M. at 440, 612 P.2d at 232. This pronouncement by our supreme court clearly indicates to me that court's understanding that, in New Mexico, warrantless arrests or searches must be justified by showing both probable cause and exigent circumstances.

The cases relied on by the majority do not alter the general rule that to proceed lawfully without a warrant, an officer must have probable cause *and* exigent circumstances must be present. In fact, the existence of such circumstances was implicit in the holdings of those cases. That is why they did not deal explicitly with the question. The majority relies on *State v. Jones,* 96 N.M. 14, 627 P.2d 409 (1981), stating that that case, "decided by our supreme court after *Martinez,* continues to set forth the applicable rule in such cases." However, *Jones* merely set out the standard for determining probable cause. *State v. Jones,* 96 N.M. at 15, 627 P.2d at 410. It did not address the issue of exigent circumstances because it was not necessary to do so—exigent circumstances were clearly present there since it was obvious that there was no time to present an affidavit to a magistrate before the arrest occurred. *Id. Jones* did not hold that probable cause *alone* justified a warrantless arrest.

The other cases relied on by the majority are equally inapposite. *Rodriquez v. State,* 91 N.M. 700, 580 P.2d 126 (1978), is consistent with the general rule. In *Rodriquez,* there was no lengthy delay (as was present in this appeal) between the time when the informant gave the information regarding a possible crime to the officer and when the officer approached the house to investigate. Additionally, no arrest occurred until after the officer had seen drug paraphernalia from the doorway and in plain view. *Rodriquez v. State.* Thus, it was not the informant's tip but rather the drug paraphernalia in plain view that provided probable cause to support the arrest. *Id.* at 703, 580 P.2d at 129.

The facts of *State v. Kaiser* also indicate the existence of exigent circumstances, although they were not discussed because their existence was obvious. Probable cause was established by both a train conductor's suspicions before the fact *and* the reaction of two police dogs trained to detect marijuana shortly before the search and seizure. The court pointed out that neither of these two facts alone would have established probable cause, but that both, coming together at the moment of seizure, did so establish. The probable cause in this appeal, on the other hand, existed *the previous day,* not at the moment just prior to the arrest or search. This is an important distinction that has escaped the majority's analysis. In *Kaiser,* the luggage containing the marijuana was on an Amtrak train. Thus, it was quite apparent that there was insufficient time to obtain an arrest warrant before the train had to leave. There is one other extremely important aspect of the *Kaiser* decision that is not only revealing but pertinent to the point I make—although our supreme court upheld the warrantless search of the suitcase that the dogs had indicated contained marijuana, it nonetheless held that the warrantless search of the other luggage in the train compartment was unlawful. As to that seizure, the court stated that the police should have "just removed the luggage, taken it to the police station, and then secured a search warrant." *Id.* at 614, 577 P.2d at 1560. Why is this part of

the holding important? Because the court recognized that the exigency had ceased—the defendants were under arrest and they and their belongings could be taken into custody; the officers had all the time they needed to obtain the warrant, because the luggage was going nowhere.

The majority's reliance on *State v. Deltenre* is likewise misplaced. Again, the facts demonstrate exigent circumstances justifying the warrantless arrest. The informant corroborated his information by displaying marijuana he had obtained from the defendant and told the officers that the defendant would be leaving his apartment soon to peddle the drugs. Thus, there was insufficient time to obtain an arrest warrant between the moment when the officer spoke with the informant and the time when he went to the apartment to investigate. Additionally, the defendant displayed guilty knowledge when the officers approached, thus corroborating what the informant had said. *State v. Deltenre.*

*State v. Garcia,* 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983), did not discuss state constitutional issues. Also, the facts are distinguishable—the delay between the time of learning of the possible crime and the moment of arrest was considerably shorter than the delay in this appeal. Equally important, the defendant, by attempting to flee when the officers wanted to question him, indicated a guilty conscience. *State v. Garcia.*

If one closely examines the facts of the New Mexico cases relied on by the majority, it is apparent that a common theme or thread runs through them—namely, the existence of exigent circumstances was so glaring that the courts found it unnecessary to note their presence. Significantly, in none of the cases relied on by the majority was there a delay, in both nature and time, similar to the delay that occurred in this appeal. In the cases involving informants, there was little delay between getting the informant's tip, corroborating the tip and effecting the arrest. Additionally, as I noted previously, our supreme court has repeatedly emphasized that warrantless searches and arrests must be closely scrutinized and that few exceptions to the warrant requirement should be allowed. I conclude that the cases relied on by the majority to conclude that probable cause alone will make a warrantless arrest lawful actually lead to the opposite conclusion: in New Mexico, both probable cause and exigent circumstances are required.

In *State v. Copeland,* 105 N.M. 27, 727 P.2d 1342 (Ct.App.1986), a case not relied on by the majority, this court discussed the necessity of having both probable cause and exigent circumstances to justify a warrantless arrest. Although this case concerned the warrantless, nonconsensual entry into a motel room, I find no New Mexico case law limiting the requirement of probable cause and exigent circumstances to "private places." Significantly, until now, no New Mexico court has ever embraced the broad exception apparently adopted in *U.S. v. Watson.* Instead, New Mexico courts have consistently required the presence of exigent circumstances, as well as probable cause, to justify warrantless searches and seizures.

The majority would create a new exception—naked probable cause as determined by the officer alone—to the constitutional requirement that police officers obtain a warrant before conducting a search or making an arrest. I consider this exception unacceptable, in light of our own supreme court's pronouncement in *Cordova* that federal precedent is not binding in interpreting Article II, section 10 of the New Mexico constitution and the consistently close scrutiny New Mexico courts have always applied to warrantless searches and arrests. I concede that, although state constitutional grounds may have been raised in the New Mexico cases I have discussed, the cases' holdings were based generally on federal constitutional requirements. However, the fact that we have not yet unequivocally asserted that our constitution provides greater protection to the people of New Mexico than the federal constitution on this issue does not prevent us from asserting the independence of our constitution now in this appeal. *See State v. Cordova.*

The majority's holding undermines "the fundamental precepts of the constitutional requirement that no warrant issue without a written showing of probable cause before a detached and neutral magistrate." *State v. Cordova,* 109 N.M. at 216, 784 P.2d at 35. As observed in *Cordova,* "[i]t is not possible to argue that since certain information, if true, would be trustworthy, therefore, it must be true. The possibility remains that the information may have been fabricated." *State v. Cordova,* 109 N.M. at 214–25, 784 P.2d at 33–34, quoting *United States v. Harris,* 403 U.S. 573, 592, 91 S.Ct. 2075, 2086, 29 L.Ed.2d 723 (1971) (Harlan, J., dissenting, joined by Douglas, Brennan, and Marshall, JJ.). It is to protect against this possibility that the New Mexico constitution requires that the existence of probable cause be considered by a neutral magistrate whenever possible before a search or an arrest is made. N.M. Const. art. II, § 10.

Our supreme court, despite affirming the validity of the warrantless arrest in *Rodriquez,* nonetheless emphasized the desirability of proceeding with a warrant in the strongest language. It stated:

> In discussing the fourth amendment policy against unnecessary invasions of privacy, it was stated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), that informed and deliberate determinations of magistrates empowered to issue warrants are to be preferred over the hurried action of officers who may happen to make arrests. In *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)[,] the United States Supreme Court strongly supported the preference to searches under a warrant and they indicated that in a marginal case a search under a warrant may be sustainable where without one it would fail. In speaking for the court in *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), Mr. Justice Jackson stated:

> > The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

> > Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. (Footnotes omitted.)

> *Id.* at 13–14, 68 S.Ct. at 369.

*Rodriquez v. State,* 91 N.M. at 704, 580 P.2d at 130. Thus, our supreme court emphasized its belief that searches performed without warrants are disfavored and should be closely scrutinized. The same rationale clearly applies to an arrest, which is even more intrusive than a search. "Surely there is no reason to place greater trust in the partisan assessment of a police officer that there is probable cause for an arrest than in his determination that probable cause exists for a search." *United States v. Watson,* 423 U.S. at 447, 96 S.Ct. at 839 (Marshall, J., dissenting).

The majority's holding wreaks the evil that the courts in this state have previously strived to avoid, namely, leaving the determination of whether the evidence is sufficient to justify a warrant solely to the discretion of police officers, thus depriving the people of their constitutional right to have the evidence scrutinized by a disinterested, neutral magistrate before their homes, persons and possessions are seized. *See State v. Baca,* 97 N.M. 379, 381, 640 P.2d 485, 487 (1982) ("it is for the neutral and detached judge to determine from the affidavit whether probable cause exists. A police officer is not vested with that authority.").

Requiring police officers to comply with the warrant requirement of the New Mexico constitution is not unduly burdensome. As noted by Justice Marshall's dissent in *United States v. Watson:*

The Government's assertion that a warrant requirement would impose an intolerable burden stems, in large part, from the specious supposition that procurement of an arrest warrant would be necessary as soon as probable cause ripens. There is no requirement that a search warrant be obtained the moment police have probable cause to search. The rule is only that present probable cause be shown and a warrant be obtained before a search is undertaken. The same rule should obtain for arrest warrants, where it makes even more sense. Unlike probable cause to search, probable cause to arrest, once formed, will continue to exist for the indefinite future, at least if no intervening exculpatory facts come to light. (Citations omitted.)

*United States v. Watson,* 423 U.S. at 449, 96 S.Ct. at 840 (Marshall, J. dissenting). Justice Marshall continued:

Police would not have to cut their investigation short the moment they obtain probable cause to arrest, nor would undercover agents be forced suddenly to terminate their work and forfeit their covers. Moreover, if in the course of the continued police investigation exigent circumstances develop that demand an immediate arrest, the arrest may be made without fear of unconstitutionality, so long as the exigency was unanticipated and not used to avoid the arrest warrant requirement. Likewise, if in the course of the continued investigation police uncover evidence tying the suspect to another crime, they may immediately arrest him for that crime if exigency demands it, and still be in full conformity with the warrant rule. . . . *Other than where police attempt to evade the warrant requirement, the rule would invalidate an arrest only in the obvious situation: where police, with probable cause but without exigent circumstances, set out to arrest a suspect. Such an arrest must be void, even if exigency develops in the course of the arrest that would ordinarily validate it; otherwise the warrant requirement would be reduced to a toothless proscription.*

In sum, the requirement that officers about to arrest a suspect ordinarily obtain a warrant before they do so does not seem unduly burdensome, at least no more burdensome than any other requirement that law enforcement officials undertake a new procedure in order to comply with the dictates of the Constitution. (Citations omitted.) (Emphasis added.)

*U.S. v. Watson,* 423 U.S. at 449–51, 96 S.Ct. at 840–41. *See also State v. Gorsuch,* 87 N.M. 135, 529 P.2d 1256 (Ct.App. 1974). "[The warrant requirement] is not a convenience to be somehow 'weighed' against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check the 'well intentioned but mistakenly over-zealous executive officers' who are a part of any system of law enforcement." *Garcia v. State,* 103 N.M. 713, 715, 712 P.2d 1375, 1377 (1986) (Sosa, J. specially concurring). The majority would reduce the warrant requirement mandated by Art. II, section 10 of the New Mexico Constitution, to a "toothless proscription" limited only by police officers' independent determination of probable cause, and, in doing so, eliminating this important check on the ability of police to intrude on the lives of our citizens. It is such over-zealous conduct that our constitutional warrant requirement was meant to protect against.

CONCLUSION

The state has made no attempt whatsoever to show that exigent circumstances existed, nor has it shown that there was inadequate time for the officer to obtain a search or arrest warrant. Instead, the state has steadfastly maintained that exigent circumstances were not required. I would conclude from the state's failure that the warrantless search and arrest of defendant therefore violated the New Mexico constitution and that the evidence seized should have been suppressed. I would thus hold that the trial court erred in not suppressing the evidence, would reverse defendant's conviction, and remand for a new trial.

This appeal comes at the discomforting time when the Supreme Court of our land is whittling away at the fundamental and sacred rights and privileges guaranteed by our federal constitution to all people from all walks of life. Regrettably, a growing number of that court's members is apparently swayed by a false public perception that the courts in this country have somehow become soft on crime in general and criminals in particular and that the rights of victims have been trampled upon in the process. Although ordinarily I would be inclined to sympathize with this often-expressed view, to me, it is only a misconception. We must take the precaution that the general public does not become its own victim of this trend. I myself usually have to work hard to resist the knee-jerk tendency of reacting to a perceived extremism by adopting an extremist point of view at the opposing end of the ideological spectrum.

To those who may be continually repelled by application of our constitutional safeguards to suppress evidence that would otherwise convict those depicted as merciless criminals, I would say—let one of their own loved ones, their own flesh and blood, or a dear and close friend, become a defendant in a criminal proceeding. It is then that they will realize the value of protecting those treasured constitutional rights they too often take for granted. It is not enough to answer that the same constitutional guarantees will permit even those perceived to be less deserving to go free. I once read a profound truism, by an author unknown, that justice in a society is measured not by how it treats its best citizen, but by how it treats its worst. As noted by now-retired, Chief Justice Sosa:

> There exist countless cases on record in which officers, either from their overzealous efforts to enforce the law or solve a crime, or because of their particular dislike of members of a certain minority group, commit acts which violate our constitution....
>
> I intend these examples simply as illustrations that courts must continually enforce constitutional rights as a reminder that such fundamental rights are not to be violated. Once we commence lowering the barriers of constitutional protections because of a particular defendant's guilt, then we lower the barriers for all, and for the countless number of people who may be unduly harassed by officers from whom we never hear because of their innocence, and because they chose to endure the harassment rather than speak up.

*State v. Capps,* 97 N.M. at 463–64, 641 P.2d at 494–95 (Sosa, J., dissenting).

I suppose the "good news" is that each of the states is free to fall back on its own state constitutional provisions to protect its citizens. Thus, a workable check and balance can be maintained between the federal constitution and the respective state constitutions—when one fails to protect us, let us hope the other one will not. This appeal affords us the opportunity to assert the independent rights guaranteed to the people of New Mexico by our own constitution. I believe we should welcome that opportunity.